FRANCES HOUSE, INC., d/b/a Smith Square, Plaintiff-Appellee, v. THE DEPARTMENT OF PUBLIC HEALTH *et al.*, Defendants-Appellants.

Third District    No. 3—94—0167

Opinion filed January 17, 1995.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Susan Frederick Rhodes, Assistant Attorney General, of counsel), for appellants.

Barash, Stoerzbach & Henson, of Galesburg (Pamela S. Wilcox, of counsel), for appellee.

Thomas J. Reed and Nahlah Jawad, both of Law Offices of Thomas J.

Reed, of Chicago, and Bruce Stratton, of Stratton, Dobbs & Nardulli, of Springfield, for *amicus curiae* Illinois Health Care Association.

JUSTICE LYTTON delivered the opinion of the court:

The Illinois Department of Public Health (IDPH) appeals from a decision of the circuit court of Knox County holding that IDPH was time barred from proceeding against Frances House, an intermediate care facility for the developmentally disabled, for violation of an administrative regulation. The trial court reversed an order of the Deputy Director of IDPH finding that Frances House was guilty of a Type B violation of IDPH regulations. We affirm the judgment.

## BACKGROUND

M.P. was 52 years old and had cerebral palsy, epileptic seizures and mild retardation. She had lived at home with her parents until they were no longer able to care for her. In her home environment, she had never been taught to dress or feed herself or to use the toilet; she also lacked sufficient muscle strength to transfer herself to and from her wheelchair.

After two months of rehabilitation therapy at Franciscan Rehabilitation Center in Rock Island, Illinois, M.P. was assessed for final placement by her doctor and the rehabilitation staff; they agreed that an intermediate facility for the developmentally disabled would be appropriate. On April 19, 1991, M.P. was admitted to a group home managed by Frances House, Inc.

At the time of her placement in the Frances House group home, M.P. was determined to need the assistance of only one person in order to transfer from a wheelchair to a bed or toilet using a transfer board. Upon admission, staff members found that, because her severe anxiety made her unwilling to help herself, and because she weighed over 200 pounds, M.P. required two or three persons to transfer her. However, the group home had only one staff person on duty during the night shift.

According to the record, M.P. was often uncooperative with the staff and made slow progress in learning to control urination and to cooperate when attempting a transfer. During her first month at Frances House, she fell three times, all without injury and all during transfers. Some nights when only one staff member was present, M.P. could not be taken to the toilet and consequently urinated or defecated in her bed. For a time a catheter was used to eliminate the need for toilet assistance, but after some infections developed, the catheter was removed.

One month after admission, M.P. was provided with a hospital

bed equipped with a pull bar, and the staff received further training in the use of a transfer board. M.P. continued to receive physical therapy at the Franciscan Rehabilitation Center to increase her muscle strength and over a period of several months learned to transfer to and from her wheelchair with the use of a transfer board. By the time of the administrative hearing in October 1992, M.P. was fully habilitated.

During May of 1991, IDPH received three complaints concerning the care M.P. was receiving, and a surveyor visited the home to investigate, as required by section 3—702(d) of the Nursing Home Care Act (210 ILCS 45/3—702(d) (West 1992)). On June 6, 1991, the surveyor conducted an exit conference at Frances House, informing the facility that a "valid report" of abuse, neglect or other deficiency had been made. Frances House provided comments on the investigator's findings on June 21, and a final recommendation was made that the findings constituted administrative warnings of violations of rules.

After review by IDPH, revised findings were issued on January 28, 1992, upgrading the infractions from administrative warnings to Type B violations of four IDPH regulations. Administrative warnings are issued for violations that do not directly threaten the health, safety or welfare of a resident, while the more serious Type B violations are those which do directly threaten the health, safety or welfare of a resident. (A Type A violation threatens serious mental or physical harm or endangers life.) Section 3—702(d) specifies that IDPH "must determine within 30 working days if any rule or provision of the Act has been violated." (210 ILCS 45/3—702(d) (West 1992).) In this case, the administrative determination of violations took place $7^1/2$ months after the initial investigation.

Frances House then requested an administrative hearing. Prior to the hearing, IDPH dropped all charges except one Type B violation for failure of the facility to comply with 77 Ill. Adm. Code § 350.1060(f) (1992): "Appropriate training and habilitation program shall be provided residents with hearing, vision, perceptual, or motor impairments, in cooperation with appropriate staff." The hearing was completed on October 16, 1992, and the final report and recommendation of the administrative law judge was issued on April 21, 1993, finding that the facility was guilty of the Type B violation. A final order was issued by the Deputy Director of IDPH on May 13, 1993, 208 days after the hearing, adopting the report of the administrative law judge. The statute requires the Director to render a decision within 30 days after termination of the hearing. 210 ILCS 45/3—707 (West 1992).

Frances House sought administrative review in the circuit court. After the parties filed briefs and presented arguments, the court reversed the final order of IDPH with a finding that the administrative decision was time barred under the mandatory provisions of the Nursing Home Care Act. The trial court ruled that IDPH had violated the mandatory 30-day limitations in both section 3—702(d) and section 3—707.

## TIME PERIOD FOR INVESTIGATION

Section 3—702(d) requires IDPH to investigate any complaint alleging abuse or neglect within seven days and requires the investigator to conduct a brief exit conference alerting the facility to any suspected serious deficiency, but the findings discussed at the exit conference are not official or final notice of violation. The statute states:

"All complaints shall be classified as 'an invalid report', 'a valid report', or 'an undetermined report'. For any complaint classified as 'a valid report', *[IDPH] must determine within 30 working days if any rule or provision of this Act has been or is being violated.*" (Emphasis added.) (210 ILCS 45/3—702(d).)

The trial court ruled that this 30-day requirement was violated because formal notice of the alleged violations of regulations was not sent until January 28, 1992, 235 days after the investigator found that the complaint was a valid report.

■ IDPH argues that the 30-day requirement for notice of violation in section 3—702(d) was held to be directory in *Moon Lake Convalescent Center v. Margolis* (1989), 180 Ill. App. 3d 245, 535 N.E.2d 956. The court there noted that the focus in construing the Nursing Home Care Act is on the legislative intent and the consequences to nursing home residents, whom the Act was intended to protect. A mandatory construction would place IDPH in the position of having to file potentially incomplete and inaccurate determinations to avoid being forever barred from proceeding against a facility and would encourage facilities to obscure issues and to delay providing necessary information. The court stated:

"While we agree that prompt action by IDPH is important to ensure that conditions which threaten the residents' health and safety are corrected, we do not believe that the protection of the residents depends upon a mandatory interpretation. Such a construction would be more injurious to residents than the benefits the residents would receive." *Moon Lake,* 180 Ill. App. 3d at 256, 535 N.E.2d at 964.

The decision in *Moon Lake* is correct as to the directory nature of section 3—702(d); the trial court erred in finding that the prescribed time period was mandatory.

## TIME PERIOD TO RENDER A DECISION

The trial court also held that IDPH violated section 3—707, which provides:

> "The Director [of IDPH] or hearing officer shall make findings of fact in such hearing, and the Director shall render his decision within 30 days after the termination of the hearing, unless additional time *not to exceed 90 days* is required by him for a proper disposition of the matter." (Emphasis added.) (210 ILCS 45/3—707 (West 1992).)

The hearing involving Frances House ended on October 16, 1992, but the final decision was not rendered until 208 days later. IDPH contends that section 3—707 should be construed to be directory for the same reasons as section 3—702(d).

The applicable rule for determining whether statutory prescriptions are directory or mandatory was stated in *Foley v. Civil Service Comm'n* (1980), 89 Ill. App. 3d 871, 873, 412 N.E.2d 612, 613:

> "Generally the provisions of a statute specifying a time within which a public officer is to perform an official act are regarded as directory unless the nature of the act to be performed or the language used in the statute evidences an intention to limit the power of the officer. (*Standard v. Village of Industry* (1894), 55 Ill. App. 523.) Provisions of this kind are not regarded as mandatory unless accompanied by negative words importing that the act shall not be done in any other manner or time than that designated (*French v. Edwards* (1872), 80 U.S. (13 Wall.) 506, 20 L. Ed. 702; *People v. Jennings* (1954), 3 Ill. 2d 125, 119 N.E.2d 781) or where a disregard of its provisions would injuriously affect a public interest or private right."

The Illinois Supreme Court restated this rule in a case involving revocation of a liquor license:

> "Ordinarily a statute which specifies the time for the performance of an official duty will be considered directory only where the rights of the parties cannot be injuriously affected by failure to act within the time indicated. However, where such statute contains negative words, denying the exercise of the power after the time named, *** it is not directory but mandatory." *Carrigan v. Liquor Control Comm'n* (1960), 19 Ill. 2d 230, 233, 166 N.E.2d 574, 576.

The mandatory effect of negative language on the interpretation of time limitations for official action has been recognized in numerous contexts. In *Foley*, a police regulation requiring that the City of Chicago Civil Service Commission give notice of its decision "no longer than seven days after termination of the hearing" was held to be mandatory. (*Foley*, 89 Ill. App. 3d at 872.) In *People v. Jennings*, pub-

lication of personal property assessments as required by a provision of the Revenue Act was construed to be mandatory. See also *Lincoln Park Realty, Inc. v. Chicago Comm'n on Human Relations* (1972), 9 Ill. App. 3d 186, 190, 292 N.E.2d 116, 119 (mandatory requirement that report of Commission be delayed no more than 60 days after issuance of notice for a hearing); *Rohm & Haas Co. v. Continental Assurance Co.* (1978), 58 Ill. App. 3d 378, 386, 374 N.E.2d 727, 733 (mandatory Insurance Code prohibition of intermingling assets of separate accounts with other assets for liability purposes).

■ Section 3—707 of the Nursing Home Care Act contains negative words in that, in addition to an initial 30-day period, the Director can have "additional time *not to exceed 90 days*" for rendering his final decision. (Emphasis added.) (210 ILCS 45/3—707 (West 1992).) Thus, under the rule of statutory construction consistently applied by Illinois courts, the time limitation in section 3—707 must be construed as mandatory.

We believe that a mandatory interpretation of section 3—707 is consistent with the intent and purpose of the Act: to protect the health, welfare and safety of home residents. (210 ILCS 45/3—101 (West 1992); *Springwood Associates v. Lumpkin* (1992), 239 Ill. App. 3d 771, 777, 606 N.E.2d 733, 736.) A prompt resolution of complaints is in the best interest of residents. IDPH will have more incentive for timely enforcement of its regulations if the statutory time period for reaching a decision after the hearing is mandatory rather than directory. IDPH lost jurisdiction of this cause when the Deputy Director failed to render a decision within 120 days of the conclusion of the hearing.

Accordingly, the judgment of the circuit court of Knox County reversing the decision of IDPH is affirmed.

Affirmed.

BRESLIN and McCUSKEY, JJ., concur.