# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*UDI #10, LLC v. Department of Public Health*, 2012 IL App (1st) 103476

| | |
|---|---|
| Appellate Court Caption | UDI #10, LLC, d/b/a Pekin Manor, Plaintiff-Appellant, v. THE DEPARTMENT OF PUBLIC HEALTH; WILLIAM BELL, Acting Deputy Director of the Department of Public Health; and DAMON T. ARNOLD, Director of the Department of Public Health, Defendants-Appellees. |
| District & No. | First District, Third Division<br>Docket No. 1-10-3476 |
| Rule 23 Order filed<br>Rule 23 Order withdrawn<br>Opinion filed | December 28, 2011<br><br>January 24, 2012<br>February 1, 2012 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | An order affirming an administrative decision of the Department of Public Health that plaintiff nursing home violated the Nursing Home Care Act when its employees failed to perform CPR on a resident was affirmed where section 3-702 of the Act, which deals with investigations of complaints, applied rather than section 3-212(a), which deals with inspections, and although the Department did not comply with the provision of section 3-702 stating that the facility "shall" be notified of the Department's findings within 10 days of the determination, that provision was not mandatory, and the Department did not lose jurisdiction when notification was given more than 10 days after the determination. |

| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-6144; the Hon. William O. Maki, Judge, presiding. |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Polsinelli Shughart PC, of Chicago (Jason T. Lundy and Meredith A. Duncan, of counsel), for appellant. |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Paul Racette, Assistant Attorney General, of counsel), for appellees. |
| Panel | PRESIDING JUSTICE STEELE delivered the judgment of the court, with opinion. Justices Neville and Murphy concurred in the judgment and opinion. |

**OPINION**

¶ 1     Plaintiff, UDI #10, LLC, d/b/a Pekin Manor (UDI), appeals from a circuit court order affirming an administrative decision that UDI violated the Nursing Home Care Act (Act) (210 ILCS 45/3-101 *et seq.* (West 2008)). After an administrative hearing, the Department's director determined UDI committed a Type "A" violation when its employees failed to perform cardiopulmonary resuscitation (CPR) on R1[1], a resident of UDI's Pekin Manor facility. The trial court found the Department retained jurisdiction over the matter and that UDI relied on an incorrect section of the Act. We affirm.

¶ 2                                    BACKGROUND

¶ 3     R1 was a 77-year-old resident of UDI, a 92-bed skilled nursing home care facility located in Pekin, Illinois. Pekin Manor is licensed by the Department as a skilled nursing facility that provides care, treatment and residency to the elderly. On August 19, 2007, R1 experienced a choking incident. Later that day, he choked again and became unresponsive, which led his wife to call UDI staff for help. The staff failed to perform CPR, although they were unsure whether he had a do not resuscitate (DNR) order. Additionally, they did not stay with him until paramedics arrived, contrary to the facility policy. When the paramedics arrived, they were neither met at the door nor directed to R1's room, which was also contrary to facility

_____

[1]R1's name is withheld to protect his identity.

policy. When the paramedics found the correct room, no UDI staff members were attending R1, who was not breathing and had no pulse. The paramedics then performed CPR on R1. They noted R1 had large amounts of food in his mouth and oropharynx, which they suctioned out. They transported him to the hospital, where he later died that same day.

¶ 4        As a result of R1's death, a complaint was filed, leading to the Department investigating UDI. The investigation revealed a DNR order was signed by R1's wife on August 9, 2007, and R1 signed one himself on August 16, 2007. However, UDI requires a doctor's signature on the DNR orders, which neither document contained. The investigation also revealed UDI's policy requires a resident's DNR status to be kept in his or her chart. R1's chart did not indicate whether he had a DNR order. The Department found UDI failed to follow its own policies when it did not ensure that its staff performed emergency treatment on R1.

¶ 5        On March 7, 2008, the Department issued a notice to UDI of a Type "A" violation of the Act and the Department's regulations. The notice explained the incident, issued a conditional six-month license for UDI, assessed a $10,000 fine against UDI, and indicated UDI would be placed on a quarterly list of violators of the Act. Additionally, the notice informed UDI of its right to request an administrative hearing regarding the decision.

¶ 6        UDI exercised its right to a hearing in March 2008. In May 2008, UDI filed a motion to dismiss the charge for lack of jurisdiction. UDI argued the Department's March 7, 2008, determination that UDI violated the Act fell outside the 60-day time frame mandated in section 3-212(c) of the Act (210 ILCS 45/3-212(c) (West 2008)). The Department filed a response asserting the time frame for determining violations is merely directory, not mandatory, and therefore, there was no loss of jurisdiction.

¶ 7        In September 2008, a Department administrative law judge (ALJ) recommended denying UDI's motion to dismiss, reasoning UDI's argument was based on section 3-212(c) of the Act (210 ILCS 45/3-212(c) (West 2008)), which applies to violations discovered during general Department inspections. Here, the violation was based on an inspection pursuant to an outside complaint. The Department's acting deputy director denied the motion to dismiss.

¶ 8        UDI then sought administrative review of the denial of its motion to dismiss in the circuit court. The trial court found the Department's jurisdiction was proper in this case and that section 3-702(d) of the Act (210 ILCS 45/3-702(d) (West 2008)) applied, not section 3-212(c) of the Act (210 ILCS 45/3-212(c) (West 2008)), because the violation was determined after a complaint investigation. The court therefore held it lacked jurisdiction over UDI's administrative review action. The matter continued before the Department.

¶ 9        On September 29, 2009, the ALJ conducted a hearing on UDI's motion to dismiss. On January 14, 2010, the ALJ issued a written recommendation to the director concluding the Department proved UDI violated regulations regarding DNR orders and emergencies, and to have the violation classified as Type "A." On January 20, 2010, the acting deputy director adopted the ALJ's report and recommendation. On February 11, 2010, UDI filed a complaint for administrative review in the circuit court, alleging the Department lacked jurisdiction for failing to comply with section 3-212(c) of the Act. The circuit court affirmed the acting deputy director's decision on November 4, 2010. UDI filed a timely notice of appeal to this court on November 16, 2010.

¶ 10                                DISCUSSION

¶ 11    At issue is whether the circuit court erred in affirming the final administrative order finding the Department had jurisdiction. UDI argues the Department lost jurisdiction over UDI's alleged violations when it issued a notice 183 days after the survey, in violation of section 3-212(c) of the Act. In its brief, the Department argues section 3-702 of the Act applies, not section 3-212(c) of the Act. Thus, we evaluate whether section 3-212(c) of the Act, which addresses inspections, or section 3-702(c) of the Act, which addresses complaints and investigations, is controlling. Because the construction of a statute is a question of law, we review the merits of this cause *de novo*. *In re Application of County Treasurer & Ex Officio County Collector of Cook County,* 2011 IL App (1st) 101966, ¶ 20.


¶ 12                            Inspection Under the Act

¶ 13    Section 3-212 of the Act, entitled "Inspection," states in pertinent part:

        "The Department, whenever it deems necessary in accordance with subsection (b), shall inspect, survey and evaluate every facility to determine compliance with applicable licensure requirements and standards." 210 ILCS 45/3-212(a) (West 2008).

When the inspection is complete, a report is submitted to both the licensee and the regional office of the Department:

        "The Director shall then determine whether the report's findings constitute a violation or violations of which the facility must be given notice. *** Violations shall be determined under this subsection no later than 60 days after completion of each inspection, survey and evaluation." 210 ILCS 45/3-212(c) (West 2008).


¶ 14                    Complaints and Investigations Under the Act

¶ 15    Section 3-702(a) of the Act states in pertinent part:

        "A person who believes that this Act or a rule promulgated under this Act may have been violated may request an investigation. *** The Department shall act on such complaints via on-site visits or other methods deemed appropriate to handle the complaints with or without such identifying information, as otherwise provided under this Section." 210 ILCS 45/3-702(a) (West 2008).

¶ 16    The Department investigates all complaints alleging abuse within seven days of receiving them, unless the complaint is regarding abuse or neglect indicating a resident's life is in imminent danger, which would be investigated within 24 hours. All other complaints are investigated within 30 days. If a complaint is classified as "a valid report," the Department has 30 days to determine whether any rules or provisions of the Act have been violated. 210 ILCS 45/3-702(d) (West 2008). In particular, the Act provides:

        "In all cases, the Department shall inform the complainant of its findings within 10 days of its determination unless otherwise indicated by the complainant, and the complainant may direct the Department to send a copy of such findings to another person.*** The Department shall also notify the facility of such findings within 10 days of the

                                      -4-

determination, but the name of the complainant or residents shall not be disclosed in this notice to the facility. The notice of such findings shall include a copy of the written determination; the correction order, if any; the warning notice, if any; the inspection report; or the State licensure form on which the violation is listed." 210 ILCS 45/3-702(e) (West 2008).

¶ 17    Our supreme court has stated that "[t]he primary rule of statutory construction is to ascertain and give effect to the intention of the legislature, and that inquiry appropriately begins with the language of the statute." *People v. Woodard*, 175 Ill. 2d 435, 443 (1997). If the language of a statute is clear and unambiguous, we do not resort to other aides of statutory construction. *Id.* at 443. In determining the statute's plain meaning, we consider the statute in its entirety, the subject being addressed, and the apparent purpose of the legislature in enacting the statute. *In re Application of County Treasurer*, 2011 IL App (1st) 101966, ¶ 21. If possible, a statute should be construed so that no language is rendered meaningless or superfluous. *Id.* Where a statute's meaning is ambiguous, courts may look beyond the statutory language and consider the law's purpose, the evil that it was intended to remedy, and the statute's legislative history. *Id.* ¶ 22. Furthermore, we may consider the resulting consequences from construing the statute in either manner and presume the legislature intended no inconvenient, absurd or unjust consequences. *Id*.

¶ 18    When a statute specifies a time for the performance of an official duty, the statute will be considered directory only if the rights of the parties cannot be injuriously affected by failure to act within the time indicated in the statute. *Lincoln Manor, Inc. v. Department of Public Health*, 358 Ill. App. 3d 1116, 1119 (2005). "However, where such statute contains negative words, denying the exercise of the power after the time named, or where a disregard of its provisions would injuriously affect public interests or private rights, it is not directory but mandatory." *Carrigan v. Illinois Liquor Control Comm'n*, 19 Ill. 2d 230, 233 (1960).

¶ 19    Next, we consider whether section 3-212(c) of the Act (210 ILCS 45/3-212(c) (West 2008)) applies to matters initiated by the Department in investigating complaints. UDI argues the Act does not distinguish between various types of surveys in setting the time period during which the Department determines violations of the Act. However, the plain language of section 3-702 of the Act outlines the time frame for investigations pursuant to the filing of a complaint. Section 3-212 of the Act does not mention inspections following the filing of a complaint. 210 ILCS 45/3-212(c) (West 2008). By merely separating the provisions, the Act distinguishes between different types of surveys: those conducted after a complaint was filed and those that were not.

¶ 20    UDI claims the Act must be read as a whole to avoid "absurd results." UDI also contends this court should read sections 3-702 and 3-212(c) of the Act together. This reading means the Department makes its determination of violations after a complaint investigation within 30 working days pursuant to section 3-702(d) of the Act (210 ILCS 45/3-702(d) (West 2008)), but no later than 60 days pursuant to section 3-212(c) of the Act (210 ILCS 45/3-212(c) (West 2008)). UDI is correct that statutes are to be read in their entirety. *People v. McCurry*, 2011 IL App (1st) 093411, ¶ 12. However, when a statute provides two separate time frames for two separate situations, we interpret the statute by applying its plain language. UDI cites *J.S.A v. M.H.*, 224 Ill. 2d 182, 197 (2007), to support its argument:

"One of the fundamental principles of statutory construction is to view all provisions of an enactment as a whole. *In re Donald A.G.*, 221 Ill. 2d 234, 246 (2006). Accordingly, words and phrases must be interpreted in light of other relevant provisions of the statute and must not be construed in isolation. *Michigan Avenue National Bank*, 191 Ill. 2d at 504."

However, UDI fails to cite the next three sentences, which read:

"We clarify, however, that where–as in the instant cause–there are two separate statutory enactments to be construed, this rule of construction does not mean that the provisions of the two separate enactments are to be construed together as a whole. To the contrary, we must construe each enactment separately, and only view the provisions within each enactment as a whole. Therefore, in the matter at bar, we will separately construe each of the relevant statutory enactments." *Id.*

¶ 21    We agree with the ALJ and the trial court that the Department possessed proper jurisdiction, and that section 3-702(d) of the Act applies in this case, not section 3-212(c), because UDI's violation was determined pursuant to a complaint investigation. In this case, the Department concluded a requested investigation following the incidents surrounding R1's death. The investigation concluded September 6, 2007, and at that time was classified as a valid report. The Act states the "Department shall also notify the facility of such findings within 10 days of the determination." 210 ILCS 45/3-702(e) (West 2010). Here, notice was not given until March 2008. UDI also claims the time frame in section 3-702(e) of the Act is mandatory and the Department's determination that a violation occurred was untimely made. "A provision is mandatory under this dichotomy when there is negative language prohibiting further action in the case of noncompliance or when the right the provision is designed to protect would generally be injured under a directory reading." (Internal quotation marks omitted.) *In re Rufus T.*, 409 Ill. App. 3d 969, 973 (2011). Courts look to the context of statutory provisions to determine legislative intent:

"Generally, the use of the word 'shall' in a statute is regarded as indicating a mandatory rather than a directory intent. The rule is not, however, an inflexible one; the statute may be interpreted as permissive, depending upon the context of the provision and the intent of the drafters." *Woodard*, 175 Ill. 2d at 445.

The use of the word "shall" is often determinative of whether a statute is mandatory as opposed to permissive, but "shall" has never been considered determinative of whether a statute is mandatory or directory. *Id.* Failure to comply with a mandatory statutory requirement will have the effect of invalidating the governmental action to which the procedural requirement relates. *Id.*

¶ 22    In *Moon Lake Convalescent Center v. Margolis*, 180 Ill. App. 3d 245, 248 (1989), this court reversed a trial court's order setting aside the decision of the director of the Department and reinstated an order revoking Moon Lake's license for violations found by the director during an inspection. In that case, the circuit court found the Department had no jurisdiction to proceed against Moon Lake, because it failed to determine alleged violations of the Act within the time limits outlined under section 3-702(d) of the Act. *Id.* at 254. The court in *Moon Lake* concluded:

"[S]ection 3-702(d) time frames are directory rather than mandatory. The primary purpose of the Act undoubtedly is to protect nursing home residents. The legislature promulgated the Act amid concern over reports of inadequate and degrading treatment of nursing home care residents." *Id.* at 255-56.

We agree that the welfare of nursing home residents is paramount and that the death of a resident due to violations by UDI is shocking to the conscience. The Department filed its notice of findings after the deadline in section 3-702(d) of the Act. However, just as the *Moon Lake* court concluded, we do not find the protection of the residents depends upon a mandatory interpretation of the section. "Such a construction would be more injurious to residents than the benefits the residents would receive." *Id*. at 256; see also *Frances House, Inc. v. Department of Public Health*, 269 Ill. App. 3d 426, 429 (1995) (citing *Moon Lake*, 180 Ill. App. 3d at 256, with approval).

¶ 23    We recognize that *Moon Lake* was distinguished by this court in *Lincoln Manor, Inc. v. Department of Public Health*, 358 Ill. App. 3d 1116 (2005). In that case, a resident of Lincoln Manor nursing home exited the home without knowledge of the staff, only to fall and fracture a hip. *Id*. at 1117-18. The Department conducted an inspection, after which a notice of violations under the Act was issued to Lincoln Manor in excess of the 120-day time period required under section 3-707 of the Act. *Id*. at 1118. The circuit court found the Department's finding of a violation of the Act void, and the appellate court affirmed. *Id.* at 1117. However, we note the court in *Lincoln Manor* explicitly acknowledged section 3-707(d) of the Act, which was at issue in *Moon Lake*, was not at issue in *Lincoln Manor* (nor is it at issue in this case). The court in *Lincoln Manor* also noted section 3-702 of the Act, which was at issue in *Moon Lake* and in the case before us, is directory (not mandatory) because it does not include negative language. *Id.* at 1120. Moreover, the *Lincoln Manor* court cited Sutherland Statutory Construction in its treatment of negative language in how such language appears in statutes:

> "According to Sutherland Statutory Construction:
>
> 'Negative words in a grant of power should never be construed as directory. Where an affirmative direction is followed by a negative or limiting provision, it becomes mandatory. Negative words do not always compel an imperative construction nor does their absence compel directory construction. However, the absence of negative words may be considered in support of directory construction.' 3 N. Singer, Sutherland Statutory Construction § 57:9, at 37 (6th ed. 2001)." *Lincoln Manor*, 358 Ill. App. 3d at 1119.

Therefore, the *Lincoln Manor* court at once acknowledges section 3-702(d) of the Act as it appears in *Moon Lake* as directory and distinguishes its ruling from that in *Moon Lake*.

¶ 24    Because we conclude section 3-702 of the Act applies, we need not evaluate UDI's question whether the negative language of "no later than" contained in section 3-212 of the Act creates a mandatory deadline the Department is required to follow. Additionally, because we find the Department had proper jurisdiction, UDI is not entitled to an award of expenses and attorney fees.

¶ 25                                 CONCLUSION

¶ 26     In sum, we conclude the Department retained jurisdiction over the matter. We reject UDI's argument the Department lost jurisdiction when it did not comply with section 3-212(c) of the Act in issuing an untimely determination of violations. We agree with the trial court and the ALJ that section 3-702 of the Act applies in this case and a finding that UDI violated the Act is in the best interest of the residents of the facility. Based upon the foregoing, we accordingly affirm the Department's administrative decision.

¶ 27     Affirmed.