# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *UDI No. 2, LLC v. Department of Public Health*, 2012 IL App (4th) 110691

---

| | |
|---|---|
| Appellate Court Caption | UDI NO. 2, LLC, d/b/a MARYVILLE MANOR, Plaintiff-Appellant, v. (No. 4-11-0691) THE DEPARTMENT OF PUBLIC HEALTH; WILLIAM BELL, Acting Deputy Director of The Department of Public Health; and DAMON T. ARNOLD, Director of The Department of Public Health, Defendants-Appellees.–COMMUNITY LIVING OPTIONS, INC., d/b/a MAPLE TERRACE, Plaintiff-Appellant, v. (No. 4-11-0692) THE DEPARTMENT OF PUBLIC HEALTH; WILLIAM BELL, Acting Deputy Director of The Department of Public Health; and DAMON T. ARNOLD, Director of The Department of Public Health, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket Nos. 4-11-0691, 4-11-0692 cons. |
| Argued | May 9, 2012 |
| Filed | June 12, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a consolidated appeal from trial court orders affirming administrative decisions of the Department of Public Health finding, pursuant to a complaint investigation, that plaintiffs violated the Nursing Home Care Act in their treatment of residents, the appellate court rejected plaintiffs' arguments that the Department lost jurisdiction when it issued untimely determinations of violations, since section 3-702(d) of the Act applied, a finding that plaintiffs violated the Act was in the best interest of the residents, and the Department's decisions were not against the manifest weight of the evidence. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, Nos. 10-MR-300, 10-MR-473; the Hon. John Schmidt, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Jason T. Lundy (argued) and Kathryn M. Stalmack, both of Polsinelli Shughart PC, of Chicago, and Daniel Maher, of Springfield, for appellant. |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Paul Racette (argued), Assistant Attorney General, of counsel), for appellees. |
| Panel | JUSTICE McCULLOUGH delivered the judgment of the court, with opinion. Justices Steigmann and Pope concurred in the judgment and opinion. |

## OPINION

¶ 1        Plaintiff, UDI No. 2, LLC, d/b/a Maryville Manor (Maryville Manor), appeals from a circuit court order affirming an administrative decision that Maryville Manor violated the Nursing Home Care Act (Act) (210 ILCS 45/1-101 to 3A-101 (West 2006)). After an administrative hearing, the Deputy Director of the Department of Public Health (Department) determined that Maryville Manor committed Type A violations when its employees failed to prevent and treat pressure sores suffered by individual residents of Maryville Manor. The circuit court found the Department retained jurisdiction over the matter and that Maryville Manor relied on an incorrect section of the Act. On August 3, 2011, Maryville Manor filed an appeal (No. 4-11-0691) challenging only the court's jurisdiction ruling.

¶ 2        Plaintiff, Community Living Options, Inc., d/b/a Maple Terrace (Maple Terrace), appeals from a circuit court order affirming an administrative decision that Maple Terrace violated the Act. After an administrative hearing, the Department's Assistant Director determined that Maple Terrace committed Type A violations and a Type B violation when its employees failed to provide adequate care for a profoundly mentally disabled resident of the Maple Terrace facility. The circuit court found that the Department retained jurisdiction over the matter and that Maple Terrace relied on an incorrect section of the Act. On August 3, 2011, Maple Terrace filed an appeal (No. 4-11-0692) challenging the court's jurisdiction ruling

and, further, arguing the Department's decision was against the manifest weight of the evidence.

¶ 3   We have consolidated these appeals for purposes of our review. We affirm.

¶ 4   We begin by setting forth the facts relevant to appeal No. 4-11-0691. Maryville Manor is a 120-bed skilled nursing, long-term care, facility located in Maryville, Illinois. Maryville Manor is licensed by the Department as a skilled nursing facility that provides care, treatment, and residency to the elderly and infirm.

¶ 5   Following a complaint allegation lodged against Maryville Manor, the Department investigated Maryville Manor. The investigation revealed that Maryville Manor committed Type A violations when its employees failed to prevent and treat pressure sores suffered by individual residents of Maryville Manor.

¶ 6   On December 27, 2007, the Department issued a notice to Maryville Manor of Type A violations of the Act and the Department's regulations. The notice explained the incidents, issued a conditional six-month license for Maryville Manor, assessed a $40,000 fine against Maryville Manor (later amended to a $10,000 fine), and indicated Maryville Manor would be placed on a quarterly list of violators of the Act. Additionally, the notice informed Maryville Manor of its right to request an administrative hearing regarding the decision.

¶ 7   On May 27, 2008, Maryville Manor requested an administrative hearing (eventually held in October 2009) regarding the decision. However, on October 15, 2008, Maryville Manor filed a motion to dismiss the charges for lack of jurisdiction. Maryville Manor argued that the Department's December 27, 2007, determination that Maryville Manor violated the Act fell outside the 60-day time frame mandated in section 3-212(c) of the Act (210 ILCS 45/3-212(c) (West 2006)). The Department filed a response asserting the time frame for determining violations is merely directory, not mandatory, and therefore, there was no loss of jurisdiction.

¶ 8   In November 2008, a Department administrative law judge (ALJ) denied Maryville Manor's motion to dismiss, reasoning Maryville Manor's argument was based on section 3-212(c) of the Act (210 ILCS 45/3-212(c) (West 2006)), which applies to violations discovered during general Department inspections. Here, the violations were based on an inspection pursuant to an outside complaint. The matter continued before the Department.

¶ 9   On January 22, 2010, the ALJ issued a written report and recommendation to the Director concluding that (1) the Department proved Maryville Manor violated regulations regarding its employees' failure to prevent and treat pressure sores suffered by individual residents of the Maryville Manor facility and (2) the violations were Type A. On January 27, 2010, the Deputy Director adopted the ALJ's report and recommendation. On February 11, 2010, Maryville Manor filed a complaint for administrative review in the circuit court alleging that the Department lacked jurisdiction for failing to comply with section 3-212(c) of the Act. The court found the Department's jurisdiction was proper in this case and that section 3-702(d) of the Act (210 ILCS 45/3-702(d) (West 2006)) applied, not section 3-212(c) of the Act (210 ILCS 45/3-212(c) (West 2006)), because the violation was determined after a complaint investigation. The court affirmed the Deputy Director's decision on July 5, 2011. Maryville Manor filed a timely notice of appeal to this court on August 3, 2011. We will

discuss additional facts as necessary in the analysis of the issues.

¶ 10    Next, we set forth the facts relevant to appeal No. 4-11-0692. R3 was a 63-year-old resident of Maple Terrace, a 16-bed intermediate care facility located in Quincy, Illinois. (R3's name is withheld to protect her identity.) Maple Terrace is licensed by the Department as an intermediate care facility that provides care and residency to developmentally disabled adults. R3's diagnosis includes Down's syndrome, Alzheimer's disease, Raynaud's syndrome, and osteoporosis. R3 functions at the level of a normal 23-month-old child. Between August 16, 2007, and December 14, 2007, R3 suffered approximately 11 falls and incurred 14 documented bruises to various areas of her body, 6 abrasions, and 2 hematomas. As a result of R3's falls and injuries, a complaint was filed, leading to the Department investigating Maple Terrace.

¶ 11    On May 20, 2008, the Department issued a notice to Maple Terrace of Type A violations of the Act and the Department's regulations. The notice explained the incidents, issued a conditional six-month license for Maple Terrace, assessed a $10,000 fine against Maple Terrace, and indicated Maple Terrace would be placed on a quarterly list of violators of the Act. Additionally, the notice informed Maple Terrace of its right to request an administrative hearing regarding the decision.

¶ 12    On May 27, 2008, Maple Terrace requested an administrative hearing (eventually held in March 2010) regarding the decision. However, on October 13, 2008, Maple Terrace filed a motion to dismiss the charges for lack of jurisdiction. Maple Terrace argued that the Department's May 20, 2008, determination that Maple Terrace violated the Act fell outside the 60-day time frame mandated in section 3-212(c) of the Act (210 ILCS 45/3-212(c) (West 2006)). The Department filed a response asserting the time frame for determining violations is merely directory, not mandatory, and therefore, there was no loss of jurisdiction.

¶ 13    In February 2009, an ALJ denied Maple Terrace's motion to dismiss, reasoning Maple Terrace's argument was based on section 3-212(c) of the Act (210 ILCS 45/3-212(c) (West 2006)), which applies to violations discovered during general Department inspections. Here, the violations were based on an inspection pursuant to an outside complaint. The matter continued before the Department.

¶ 14    On July 6, 2010, the ALJ issued a written recommendation to the Director concluding that the Department proved Maple Terrace violated regulations regarding its employees' failure to provide adequate care for R3 and to have the violations classified as Type A violations and one Type B violation. Further, the ALJ reduced the assessed $10,000 fine against Maple Terrace to a $5,000 fine against Maple Terrace. On July 16, 2010, the Assistant Director adopted the ALJ's report and recommendation. On August 5, 2010, Maple Terrace filed a complaint for administrative review in the circuit court, alleging that the Department lacked jurisdiction for failing to comply with section 3-212(c) of the Act, and arguing the Department's decision was against the manifest weight of the evidence. The court found the Department's jurisdiction was proper in this case and that section 3-702(d) of the Act (210 ILCS 45/3-702(d) (West 2006)) applied, not section 3-212(c) of the Act (210 ILCS 45/3-212(c) (West 2006)), because the violation was determined after a complaint investigation. The court affirmed the Assistant Director's decision on July 5, 2011. Maple

Terrace filed a timely notice of appeal to this court on August 3, 2011. We will discuss additional facts as necessary in the analysis of the issues.

¶ 15    First at issue is whether the circuit court erred in affirming the final administrative orders finding the Department had jurisdiction. Plaintiffs argue that the Department lost jurisdiction over the alleged violations when it issued a notice to Maryville Manor 143 days after the survey, and to Maple Terrace 130 days after the survey, in violation of section 3-212(c) of the Act. In its brief, the Department argues that section 3-702(d) of the Act applies, not section 3-212(c) of the Act. Thus, we evaluate whether section 3-212(c) of the Act, which addresses inspections, or section 3-702(d) of the Act, which addresses complaints and investigations, is controlling. Because the construction of a statute is a question of law, we review the merits of this issue *de novo*. *In re Application of the County Collector*, 356 Ill. App. 3d 668, 670, 826 N.E.2d 951, 953 (2005).

¶ 16    Section 3-212 of the Act, entitled "Inspection," states in pertinent part:

"The Department, whenever it deems necessary in accordance with subsection (b), shall inspect, survey and evaluate every facility to determine compliance with applicable licensure requirements and standards." 210 ILCS 45/3-212(a) (West 2006).

When the inspection is complete, a report is submitted to both the licensee and the regional office of the Department:

"The Director shall then determine whether the report's findings constitute a violation or violations of which the facility must be given notice. *** Violations shall be determined under this subsection no later than 60 days after completion of each inspection, survey and evaluation." 210 ILCS 45/3-212(c) (West 2006).

¶ 17    Section 3-702(a) of the Act addresses complaints and investigations under the Act, stating in pertinent part:

"A person who believes that this Act or a rule promulgated under this Act may have been violated may request an investigation. *** The Department shall act on such complaints via on-site visits or other methods deemed appropriate to handle the complaints with or without such identifying information, as otherwise provided under this Section." 210 ILCS 45/3-702(a) (West 2006).

¶ 18    The Department investigates all complaints alleging abuse within seven days of receiving them, unless the complaint is regarding abuse or neglect indicating a resident's life is in imminent danger, which would be investigated within 24 hours. All other complaints are investigated within 30 days. If a complaint is classified as "a valid report," the Department has 30 days to determine whether any rules or provisions of the Act have been violated. 210 ILCS 45/3-702(d) (West 2006). In particular, the Act provides:

"In all cases, the Department shall inform the complainant of its findings within 10 days of its determination unless otherwise indicated by the complainant, and the complainant may direct the Department to send a copy of such findings to another person. *** The Department shall also notify the facility of such findings within 10 days of the determination, but the name of the complainant or residents shall not be disclosed in this notice to the facility. The notice of such findings shall include a copy of the written determination; the correction order, if any; the warning notice, if any; the inspection

-5-

report; or the State licensure form on which the violation is listed." 210 ILCS 45/3-702(e) (West 2006).

¶ 19    Our supreme court has stated that the primary rule of statutory construction is to ascertain and give effect to the intention of the legislature, and that inquiry appropriately begins with the language of the statute. *People v. Diggins*, 235 Ill. 2d 48, 54, 919 N.E.2d 327, 331 (2009). If the language of a statute is clear and unambiguous, we do not resort to other aides of statutory construction. *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 440, 925 N.E.2d 1113, 1117 (2010). In determining the statute's plain meaning, we consider the statute in its entirety, the subject being addressed, and the apparent purpose of the legislature in enacting the statute. *Weather-Tite, Inc. v. University of St. Francis*, 233 Ill. 2d 385, 389-90, 909 N.E.2d 830, 833 (2009). If possible, a statute should be construed so that no language is rendered meaningless or superfluous. *Weather-Tite*, 233 Ill. 2d at 390, 909 N.E.2d at 833. Where a statute's meaning is ambiguous, courts may look beyond the statutory language and consider the law's purpose, the evil that it was intended to remedy, and the statute's legislative history. *Ultsch v. Illinois Municipal Retirement Fund*, 226 Ill. 2d 169, 181, 874 N.E.2d 1, 8 (2007). Further, we may consider the resulting consequences from construing the statute in either manner and presume the legislature intended no inconvenient, absurd, or unjust consequences. *People v. Zimmerman*, 239 Ill. 2d 491, 497, 942 N.E.2d 1228, 1232 (2010).

¶ 20    When a statute specifies a time for the performance of an official duty, the statute will be considered directory only if the rights of the parties cannot be injuriously affected by failure to act within the time indicated in the statute. *Lincoln Manor, Inc. v. Department of Public Health*, 358 Ill. App. 3d 1116, 1119, 832 N.E.2d 956, 958 (2005). "However, where such statute contains negative words, denying the exercise of the power after the time named, or where a disregard of its provisions would injuriously affect public interests or private rights, it is not directory but mandatory." *Carrigan v. Illinois Liquor Control Comm'n*, 19 Ill. 2d 230, 233, 166 N.E.2d 574, 576 (1960).

¶ 21    In *UDI # 10, LLC v. Department of Public Health*, 2012 IL App (1st) 103476, 964 N.E.2d 1268, the First District Appellate Court addressed the same issue plaintiffs now raise, whether the Department lost jurisdiction over alleged violations when it issued a notice more than 60 days after the survey, in violation of section 3-212(c) of the Act. The First District rejected UDI's argument that the Department lost jurisdiction when it did not comply with section 3-212(c) of the Act in issuing an untimely determination of violations. The First District agreed with the circuit court and the ALJ that section 3-702(d) of the Act applied and that a finding that UDI violated the Act was in the best interest of the residents of the facility. *UDI # 10*, 2012 IL App (1st) 103476, ¶ 21, 964 N.E.2d 1268. We adopt the *UDI # 10* court's reasoning.

¶ 22    The plain language of section 3-702 of the Act outlines the time frame for investigations pursuant to the filing of a complaint. 210 ILCS 45/3-702(d) (West 2008). Section 3-212 of the Act does not mention inspections following the filing of a complaint. 210 ILCS 45/3-212(c) (West 2006). By merely separating the provisions, the Act distinguishes between different types of surveys, those conducted after a complaint was filed and those that were not.

¶ 23    Plaintiffs claim the Act must be read as a whole to avoid "absurd results." Plaintiffs also contend that this court should read sections 3-702 and 3-212(c) of the Act together. This reading means the Department makes its determination of violations after a complaint investigation within 30 working days pursuant to section 3-702(d) of the Act (210 ILCS 45/3-702(d) (West 2006)) but no later than 60 days pursuant to section 3-212(c) of the Act (210 ILCS 45/3-212(c) (West 2006)). Plaintiffs are correct that statutes are to be read in their entirety. *Weather-Tite*, 233 Ill. 2d at 389-90, 909 N.E.2d at 833. However, when a statute provides two separate time frames for two separate situations, we interpret the statute by applying its plain language. We agree with the ALJ and the circuit court that the Department possessed proper jurisdiction, and that section 3-702(d) of the Act applies in this case, not section 3-212(c), because plaintiffs' violations were determined pursuant to complaint investigations.

¶ 24    In *Moon Lake Convalescent Center v. Margolis*, 180 Ill. App. 3d 245, 248, 535 N.E.2d 956, 958-59 (1989), the First District reversed a circuit court's order setting aside the decision of the Director of the Department, and reinstated an order revoking *Moon Lake*'s license for violations found by the Director during an inspection. In that case, the circuit court found the Department had no jurisdiction to proceed against *Moon Lake* because it failed to determine alleged violations of the Act within the time limits outlined under section 3-702(d) of the Act. *Moon Lake*, 180 Ill. App. 3d at 254, 535 N.E.2d at 962. The court in *Moon Lake* concluded:

> "[S]ection 3-702(d) time frames are directory rather than mandatory. The primary purpose of the Act undoubtedly is to protect nursing home residents. The legislature promulgated the Act amid concern over reports of inadequate and degrading treatment of nursing home residents." *Moon Lake*, 180 Ill. App. 3d at 255-56, 535 N.E.2d at 963.

We agree that the welfare of residents is paramount. The Department filed its notices after the deadline in section 3-702(d) of the Act. However, just as the *Moon Lake* court concluded, we do not find the protection of the residents depends upon a mandatory interpretation of the section. "Such a construction would be more injurious to residents than the benefits the residents would receive." *Moon Lake*, 180 Ill. App. 3d at 256, 535 N.E.2d at 964; see also *Frances House, Inc. v. Department of Public Health*, 269 Ill. App. 3d 426, 429, 645 N.E.2d 1009, 1012 (1995) (citing *Moon Lake*, 180 Ill. App. 3d at 256, 535 N.E.2d at 964, with approval).

¶ 25    We recognize that *Moon Lake* was distinguished by this court in *Lincoln Manor*, 358 Ill. App. 3d at 1120, 832 N.E.2d at 959. In that case, a resident of Lincoln Manor nursing home exited the home without knowledge of the staff, only to fall and fracture a hip. *Lincoln Manor*, 358 Ill. App. 3d at 1117-18, 832 N.E.2d at 957. The Department conducted an inspection, after which a notice of violations under the Act was issued to Lincoln Manor in excess of the 120-day time period required under section 3-707 of the Act. *Lincoln Manor*, 358 Ill. App. 3d at 1118, 832 N.E.2d at 957. The circuit court found the Department's finding of a violation of the Act void, and the appellate court affirmed. *Lincoln Manor*, 358 Ill. App. 3d at 1118, 832 N.E.2d at 957. However, we explicitly acknowledged that section 3-702(d) of the Act, which was at issue in *Moon Lake*, was not at issue in *Lincoln Manor*. The court in *Lincoln Manor* also noted that section 3-702 of the Act, which was at issue in *Moon Lake*

-7-

and in the case before us, is directory (not mandatory) because it does not include negative language. *Lincoln Manor*, 358 Ill. App. 3d at 1120, 832 N.E.2d at 959.

¶ 26    Because we conclude that section 3-702(d) of the Act applies, we need not evaluate plaintiffs' question whether the negative language of "no later than" contained in section 3-212 of the Act creates a mandatory deadline the Department is required to follow. Additionally, because we find the Department had proper jurisdiction, plaintiffs are not entitled to an award of expenses and attorney fees.

¶ 27    We conclude, as did the appellate court in *UDI # 10*, that the Department retained jurisdiction over the matters. We reject plaintiffs' argument that the Department lost jurisdiction when it did not comply with section 3-212(c) of the Act in issuing an untimely determination of violations. We agree with the circuit court and the ALJ that section 3-702(d) of the Act applies in these cases, and a finding that plaintiffs violated the Act is in the best interest of the residents of the facilities.

¶ 28    Second at issue (in case No. 4-11-0692) is whether the circuit court erred in affirming the Assistant Director's decision on the basis that it was contrary to the manifest weight of the evidence.

¶ 29    An administrative agency's findings of fact are deemed *prima facie* true and correct. 735 ILCS 5/3-110 (West 2006); *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204, 692 N.E.2d 295, 302 (1998). Determinations as to weight of the evidence and credibility of witnesses are matters left to the agency and will not be disturbed on review unless they are against the manifest weight of the evidence. *Terrano v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 315 Ill. App. 3d 270, 274, 733 N.E.2d 905, 908 (2000). An administrative agency's conclusions of law, however, are afforded less deference and are reviewed on a *de novo* basis. *City of Belvidere*, 181 Ill. 2d at 205, 692 N.E.2d at 302. When the agency's determination involves a mixed question of fact and law, the applicable standard of review is the clearly erroneous standard, which falls between a manifest-weight-of-the-evidence standard and *de novo* review, so as to give some deference to the agency's experience and expertise. *City of Belvidere*, 181 Ill. 2d at 205, 692 N.E.2d at 302.

¶ 30    Maple Terrace argues that the Department's finding that it violated section 350.620(a) of title 77 of the Illinois Administrative Code (Code) (77 Ill. Adm. Code 350.620(a) (2012)) is against the manifest weight of the evidence. Section 350.620(a) of title 77 of the Code states:

> "The facility shall have written policies and procedures governing all services provided by the facility which shall be formulated with the involvement of the administrator. The policies shall be available to the staff, residents and the public. These written policies shall be followed in operating the facility and shall be reviewed at least annually." 77 Ill. Adm. Code 350.620(a) (2012).

The Department found that Maple Terrace violated section 350.620(a) when employees failed to follow Maple Terrace policy numbers 5.24 (investigative committee policy); 5.29 (quality assurance committee policy); and 5.57 (physical injury and illness/individual medical emergency policy). The Department further found that Maple Terrace's failure to follow these policies presented the substantial probability that death or serious mental or

physical harm would result therefrom.

¶ 31 Maple Terrace's policy number 5.24 states that "any facility employee or agent who witnesses or suspects a violation of resident rights, abuse or neglect as well as injuries of unknown source shall immediately report the matter to facility management." In order for the incident to be considered reported, the employee or agent must speak directly to an administrator, executive director, or director of operations. The Department found that Maple Terrace employees violated this policy on 13 occasions. For example, on August 20, 2007, employees documented finding a golf-ball-size bruise on R3's right buttock. The Department found the bruise constituted an injury of unknown source and, further, the bruise was not immediately reported to an administrator, executive director, or director of operations.

¶ 32 Maple Terrace's policy number 5.57 states:

"In the event that an individual sustains an injury or an illness, staff on duty shall conduct observation and take appropriate action consistent with the following:

A. Observe the individual to determine basic information necessary for nurses or physicians to make further judgments.

B. Notify the House Manager, [qualified mental retardation professional (QMRP)], or Administrator for consultation and direction.

C. The House Manager, QMRP, or Administrator shall notify the [registered nurse (RN)] for consultation and direction, if necessary."

¶ 33 The Department found that facility staff violated this policy on 27 occasions by either failing to notify the house manager, QMRP, or administrator per paragraph B or failure to notify the RN per paragraph C. For example, on August 16, 2007, R3 fell in the living room and was found in a sitting position between a couch and coffee table. A direct service person (DSP) took vital signs but did not record them. The DSP performed a body check and noted no visible marks. The Department found the DSP not qualified to perform a medical evaluation or injury determination. Further, staff did not notify the house manager, QMRP, or administrator, and staff did not notify the RN.

¶ 34 Maple Terrace's policy number 5.29 states that "[t]he facility shall have a Quality Assurance Committee to review medication records, medication administration practices, pharmacy recommendations, medical issues, and individual's incident reports." The quality assurance committee is to meet "at least quarterly or as needed at the discretion of the administrator and registered nurse." Although Maple Terrace references two reports that discuss incidents of R3 falling and bruising, there is nothing in the reports that address a committee's review of medication records, medication administration practices, pharmacy recommendations, or medical issues other than R3's bruises.

¶ 35 Therefore, the Department's finding that Maple Terrace violated section 350.620(a) of title 77 of the Code was not against the manifest weight of the evidence.

¶ 36 Maple Terrace next argues that the Department's finding that Maple Terrace violated section 350.700(a) of title 77 of the Code is legally erroneous and against the manifest weight of the evidence.

¶ 37 At the time of the alleged violation, section 350.700(a) stated that "[t]he facility shall

notify the Department of any incident or accident which has, or is likely to have, a significant effect on the health, safety, or welfare of a resident or residents. Incidents and accidents requiring the services of a physician, hospital, police or fire department, coroner, or other service provider on an emergency basis shall be reported to the Department." 77 Ill. Adm. Code 350.700(a), amended at 13 Ill. Reg. 6040, 6141 (eff. Apr. 17, 1989). The Department found that Maple Terrace violated section 350.700(a) because the facility did not notify the Department of at least 11 incidents involving R3. The Department further found that Maple Terrace's failure to notify the Department threatened the health, safety, and welfare of R3. Because the facility did not notify the Department of the incidents involving R3, the Department was not able to perform a more timely investigation and thereby, "potentially resolv[e] the facilities noted noncompliance with provisions of the Act and Code."

¶ 38    Maple Terrace argues that none of the incidents were "serious" or required the services of a physician, hospital, police or fire department, or coroner on an emergency basis. Section 350.700(a) requires only that the facility notify the Department of incidents likely to have a significant effect on the health, safety, or welfare of a resident. The record shows that between October 16, 2007, and December 14, 2007, employees observed on R3 (1) bruising on the right side of the forehead; (2) bruising on the lower aspect of the right forearm, (3) multiple knots on the right side of the eye, as well as bruising; (4) bruising on the calf (six to eight inches in length); (5) bruising above the lip; (6) bruising on the right thigh (six inches by six inches); (7) bruising at the tailbone; and (8) scratches on the neck, nose, and breast.

¶ 39    Deborah Montgomery, a registered nurse, testified that she conducted the complaint investigation of Maple Terrace in the instant case. According to Montgomery, the Department should have been notified of at least 11 incidents regarding R3. Andrew Johnson testified that he is a registered nurse and consultant for Maple Terrace. He works between two and eight hours each week. In a report dated September 23, 2007, Johnson noted that R3 had experienced "a couple of falls" without serious injury. The progress notes show R3 had fallen four or five times between August 16, 2007, and September 23, 2007. Johnson stated that he "may have or may not have" been aware of R3's falls between August 16, 2007, and December 14, 2007.

¶ 40    Based on the evidence, the Department's finding that Maple Terrace's failure to notify the Department of at least 11 incidents involving R3 threatened the health, safety, and welfare of R3 is not legally erroneous or against the manifest weight of the evidence.

¶ 41    Maple Terrace next argues that the Department's determination that it violated sections 350.1230(b)(3), (b)(6), and (b)(7) of title 77 of the Code is legally erroneous.

Section 350.1230 states, in relevant part:

"(b) Residents shall be provided with nursing services, in accordance with their needs, which shall include, but are not limited to, the following: The [Director of Nursing Services] shall participate in:

* * *

(3) Periodic reevaluation of the type, extent, and quality of services and programming.

"(6) Development of a written plan for each resident to provide for nursing services as part of the total habilitation program.

(7) Modification of the resident care plan, in terms of the resident's daily needs, as needed." 77 Ill. Adm. Code 350.1230(b)(3), (b)(6), (b)(7) (2012).

¶ 42    The Department found that Maple Terrace's failures "to notify the consultant RN of falls and injuries, and the resultant failure of the RN to assess them, establish the facilities [*sic*] failure to provide R3 with nursing services in accordance with her needs, which failure created a condition relating to the operation of the facility that presented a substantial probability that death or serious mental or physical harm would result therefrom."

¶ 43    Maple Terrace cites to a section of the Code detailing areas in which direct care personnel are trained. We fail to see how this is relevant to a discussion of the director of nursing services' participation in (1) a resident's periodic reevaluation of the type, extent, and quality of services and programming, (2) the development of a written plan for each resident to provide for nursing services as part of the total habilitation program, and (3) the modification of the resident care plan, in terms of the resident's daily needs. Further, Maple Terrace argues that the ALJ made improper credibility determinations because the Department surveyor "distorted the truth and suppressed evidence." This court will not reweigh the evidence here or make independent determinations of credibility. See *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 272, 917 N.E.2d 899, 904 (2009) (the court should limit its inquiry to ascertaining whether the findings and decision of the agency are against the manifest weight of the evidence). Maple Terrace also argues that the Department's findings were arbitrary and capricious because it found some incidents were violations of section 350.1230(b) and some incidents were not violations of the section. Maple Terrace suggests the incidents and injuries were identical. We disagree. An incident resulting in a coin-sized bruise and an incident resulting in a bruise measuring six inches by six inches are not identical.

¶ 44    The Department noted a further basis for finding a violation of section 350.1230(b), stating:

"I find that although the facility did have an initial plan for resident R3, they did not update it as necessary. RSD/QMRP Koehler noted that R3 had been subject to a series of falls, but no plan to address those falls was created and nothing was done to update the existing plan to take into account that trend or pattern that had been noticed. I find this to establish a violation of Code Section 350.1230(b)."

¶ 45    Section 350.1230(b) requires the director of nursing services' participation in (1) a resident's periodic reevaluation of the type, extent, and quality of services and programming, (2) the development of a written plan for each resident to provide for nursing services as part of the total habilitation program, and (3) the modification of the resident care plan, in terms of the resident's daily needs. Maple Terrace argues that the Department's finding is against the manifest weight of the evidence because (1) on November 27, 2007, the RSD/QMRP instructed staff to begin "physically guiding" R3 through doorways; (2) on November 28, 2007, Maple Terrace prepared an investigative committee report concerning the reporting to

the Department of R3's bruising by a day training center employee (on November 26, 2007); and (3) on December 6, 2007, Maple Terrace convened a "special staffing" discussing R3 and "suggestions" for her care not yet put into place. The testimony and documents referenced by Maple Terrace do not establish compliance with section 350.1230(b) of title 77 of the Code. The Department's finding is not against the manifest weight of the evidence.

¶ 46     Maple Terrace concludes its argument regarding sections 350.1230(b)(3), (b)(6), and (b)(7) by asserting that the sections do not apply to Maple Terrace because Maple Terrace is an intermediate care facility for the developmentally disabled of 16 beds or less. Maple Terrace suggests that section 350.3750 of title 77 of the Code (77 Ill. Adm. Code 350.3750 (2012)) substitutes for section 350.1230(b). Nothing in the language of section 350.3750 indicates it substitutes for section 350.1230(b) of the Code where an intermediate care facility for the developmentally disabled houses a maximum of 16 residents.

¶ 47     Maple Terrace next argues that the Department's determination that it violated section 350.3240 of title 77 of the Code is arbitrary and capricious and against the manifest weight of the evidence. Section 350.3240(a) states that "[a]n owner, licensee, administrator, employee or agent of a facility shall not abuse or neglect a resident." 77 Ill. Adm. Code 350.3240(a) (2012). "Neglect" is defined by Department regulations as "a failure in a facility to provide adequate medical or personal care or maintenance, which failure results in physical or mental injury to a resident or in the deterioration of a resident's physical or mental condition." 77 Ill. Adm. Code 350.330 (2012).

¶ 48     The Department found that Maple Terrace neglected R3 in violation of section 350.3240(a) due to the "totality of failures." Maple Terrace argues that it was "arbitrary and capricious" for the Department to find that it violated section 350.3240(a)'s prohibition against neglect based on the Department's findings of other regulatory violations. We disagree. The totality of the circumstances surrounding R3's care evidenced a failure in Maple Terrace to provide adequate care, which failure resulted in physical injury to R3 or in the deterioration of her physical condition. Further, a diagnosis of worsening dementia does not excuse a facility's failure to provide a resident with adequate care.

¶ 49     Finally, Maple Terrace argues that the Department's finding that it neglected R3 ignores the approximately 40 entries in R3's progress notes from August, September, October, November, and December 2007. The record is clear that the Department considered Maple Terrace's progress notes, documenting the multiple injuries suffered by R3 over the course of approximately four months, in making its determination. The Department's finding is not against the manifest weight of the evidence.

¶ 50     For the reasons stated, in each case, we affirm the circuit court's judgment affirming the Department's final order.

¶ 51     Affirmed.