2 Ill.2d 232 (1954)
117 N.E.2d 765
L.B. ZBINDEN et al., Appellants,
v.
BOND COUNTY COMMUNITY UNIT SCHOOL DISTRICT No. 2, Appellee.
No. 32999.
Supreme Court of Illinois.
Opinion filed January 20, 1954.
Rehearing denied March 15, 1954.
*233 M.J. BROWN, of Hillsboro, and JESSE R. BROWN, of Edwardsville, for appellants.
GLEN B. WILSON, and FOSS D. MEYER, both of Greenville, for appellee.
Order affirmed.
Mr. JUSTICE MAXWELL delivered the opinion of the court:
This cause arose out of a school election whereat four propositions were submitted to the electors. L.B. Zbinden and five other residents of the defendant school district filed their petition to contest in the county court of Bond County. Upon a recount of the ballots the trial court entered an order finding that each of the propositions had *234 carried by approximately the same majorities as the board of education had found by its canvass. The court dismissed the petition and petitioners appeal directly to this court.
A special election was called by the board of education of Unit District No. 2 and held March 14, 1953, under the provisions of article 5A of the School Code (Ill. Rev. Stat. 1951, chap. 122, par. 5A-1 et seq.) Briefly, the propositions submitted to the electors were: (1) to select a site; (2) to purchase a site; (3) to build, and (4) to issue bonds in the amount of $975,000. For the purpose of the election the district was divided into seven precincts, a polling place was fixed in each and two judges and one clerk appointed for each polling place. The returns were canvassed by the board of education and it declared that all propositions had carried by a majority of the votes cast on each proposition.
Petitioners contend (1) that the judges and clerk in precinct No. 6 exchanged duties, (2) that the board of education failed to provide a sufficient number of voting booths, and (3) that the board neglected to provide a sufficient enclosure within which to conduct the election. It is further contended that, by virtue of the irregularities complained of, all of the votes in precinct No. 6 should have been excluded from the count. Other irregularities were alleged in the petition and amendments thereto but have been waived and consequently will not be here considered.
Precinct No. 6 was large and carried for all four propositions by margins so substantial that if the vote of that precinct be excluded, then all propositions failed. Our factual comments, therefore, will be confined to that precinct.
Mrs. Ellen Snowden and Lucille Jett were appointed judges and P.K. Harris was appointed clerk, and each took oath and qualified for the respective offices for which she or he was appointed. All appeared just prior to the opening of the polls and stayed at the polling place until after the polls closed and the votes were counted. It appears that Harris could not write fast nor legibly and it was decided *235 by the election officials that the judges should alternate in entering the electors' names in the poll book, and they did so. The ballots were all initialed by the judges with their respective initials. While there was some dispute as to whether all of the ballots had been handed to the voters by the judges, the weight of the evidence was clearly that the judges handed out all or substantially all of the ballots.
Harris received most of the voted ballots and placed them in the ballot box. The judges and clerk joined in counting the ballots. One of the judges tallied the votes on the tally sheet but it was signed and certified by Harris in his official capacity as clerk and by Mrs. Snowden and Miss Jett each in her official capacity as judge.
Article 5A of the School Code was adopted and became effective June 9, 1951. Section 5A-8 provides for the appointment of two judges and one clerk for each voting precinct. Section 5A-14 states that the ballot box shall be publicly opened and exhibited and the election officials shall see that there are no ballots in the box; that the clerk shall enter the name of each elector in a poll book; that the official ballots shall remain in charge of the judges; that one of the judges shall give the voter one each of the ballots to be voted and that one of the judges shall endorse his initials upon each ballot. Section 4A-15 provides that after closing the polls the judges of election shall canvass the votes polled and the clerk shall enter upon a tally list kept by him the votes cast for or against each proposition.
It is apparent from an examination of the facts, briefly set out above, that the statute was not literally followed in several respects. The clerk failed to enter the names in the poll book and did not tally the votes upon the tally list. The judges did not have the ballots in their exclusive possession by permitting the clerk to fold them and to receive voted ballots to be placed in the ballot box. The judges also had the assistance of the clerk in counting and canvassing the votes.
*236 The question involved is whether the provisions of the sections which were not literally complied with were mandatory or directory. If they be mandatory as contended by petitioners, then none of the votes cast in precinct No. 6 could be counted, with the result that the propositions failed.
No universal rule can be fixed between directory and mandatory provisions of the statutes. Whether it is one or the other depends upon the legislative intention, to be ascertained from the nature and object of the act and the consequences which would result from construing it one way or another. (Siedschlag v. May, 363 Ill. 538.) We have said that it would be a dangerous rule to establish that election officials may disregard the plain provisions of the statute, and thereby defeat the intention of the law to prevent frauds from being committed and detected. (Sibley v. Staiger, 347 Ill. 288; Tuthill v. Rendelman, 387 Ill. 321.) On the other hand, the courts must consider the primary purpose of laws such as those under consideration, i.e., the obtaining of fair elections and honest returns, as paramount in importance to the formal steps prescribed to reach that end. People ex rel. Agnew v. Graham, 267 Ill. 426.
There is no proof of fraud or improper conduct upon the part of the election officials arising from a wrongful intent. Furthermore, there is no evidence that the deviations complained of deprived any legal voter of his vote or in any way changed the result of the election. The irregularities occurred in a division of the work between the judges and clerk, in order to facilitate the carrying out of their election duties and to preserve a legible and correct record of the election.
Petitioners cite Harvey v. Sullivan, 406 Ill. 472, in support of their position. That case followed Tuthill v. Rendelman, 387 Ill. 321, and others which held mandatory the provisions that each election judge must place his own initials upon the ballot and that failure to do so voided *237 any ballot not so initialed. The Harvey case turned primarily upon the proposition that the person who qualified as a clerk was neither a de jure nor a de facto judge, and, therefore, the ballots initialed by such clerk could not be counted. Neither of those particular questions is here involved.
We hold that, in the absence of proof of fraud or wilful misconduct, the statutory provisions here violated were directory and that the trial court committed no error in refusing to exclude the vote in precinct No. 6.
The second and third contentions raised by petitioners relate to the alleged failure of the board of education to supply a sufficient number of booths and an enclosure within which the voters could cast their votes in privacy.
The polling place for precinct No. 6 was the downstairs corridor of the Central school building in the city of Greenville. A number of rooms were connected by doorways leading from the corridor to the various rooms. Four or five booths were provided at the east end of the corridor. In the doorway to two of the rooms, a desk or table was pulled up or into the opening. Some of the voters voted in such doorways. There was some dispute as to whether any of the doors leading into adjacent rooms from the corridor were open. It appears from the evidence that some of the voters went into a small classroom immediately adjoining the corridor to mark their ballots. There were 1720 votes cast at the polling place between 12 o'clock and 7 o'clock and at times lines of waiting voters formed. A few voted outside the booths or the doorways provided for that purpose, and some were admonished by the judges to vote in the booths. It does appear that the voting was done in secret, although several witnesses testified that they went to a secluded place in the corridor and marked their ballots. Section 5A-7 of the School Code (Ill. Rev. Stat. 1951, chap. 122, par. 5A-7,) provides in part as follows: "All officers designating or providing polling places shall *238 provide in each polling place a means for the voter to mark his ballot in secret." This differs from the Election Code which places a duty upon the election officials to provide in each polling place a sufficient number of booths. (Ill. Rev. Stat. 1951, chap. 46, par. 17-8.) It will be noted therefore, that the School Code does not provide for booths but only provides that a means must be given the voter to mark his ballot in secret.
It is argued by petitioners that the provisions of the Election Code relative to the providing of booths should be read into the School Code, and they cite the case of Scofield v. Board of Education, 411 Ill. 11, in support of their argument. Section 5A-2 of the School Code provides, "The provisions of the Election Code shall not apply to any elections held under this Article unless expressly provided by this Article." This plain provision of the statute definitely rules out a consideration of the Election Code in connection with a school election. The question involved in the Scofield case was whether article 5A of the School Code was unconstitutional for the reason that it omitted qualifications of voters as to age and citizenship. We there held that voter qualifications could be implied from the Election Code where a palpable omission in the School Code would have thwarted the apparent legislative intent.
In the case now under consideration it cannot be contended that the legislature omitted anything essential to the conducting of school elections. Section 5A-7 of the School Code is complete in itself insofar as providing the voter with means to mark his ballot in secret. The legislature saw fit to leave it to the person or board calling the election to provide means and methods for secret voting. We hold that the provisions of the Election Code do not apply in school elections and, therefore, the only thing to here consider is whether, in the absence of fraud, the board of education reasonably complied with the quoted provision of the School Code by providing a means for secret *239 ballot. While a large number of persons voted at this polling place and the number of booths were limited, we are of the opinion that there was reasonable compliance with the statute and that the board of education provided sufficient means by which the voters could vote their ballots in secret.
Section 5A-14 of the School Code (Ill. Rev. Stat. 1951, chap. 122, par. 5A-14,) provides that upon receipt of his ballot the voter shall forthwith, without leaving the enclosure in which the election is held, prepare his ballot. We have heretofore held that the Election Code does not here apply and it is only necessary to consider the wording of the School Code with respect to the enclosure. The enclosure fixed for the election at the polling place in precinct No. 6 was the downstairs corridor. Certainly the doorways leading to other rooms where the doors were closed and a desk or table placed in front of or within the doorways was within the enclosure provided. As hereinabove stated, there was some proof that one of the doors was open leading into a small room and that some voters marked their ballots therein. There is no proof that this small room had any other entrance or exit and so far as the record showed ingress and egress could only be had from the corridor upon which it abutted. It cannot reasonably be said that the use of this small room abutting on the corridor was not within the enclosure provided. There was no substantial proof that those persons who marked their ballots in that room were not marking them in secret, nor any proof that any voter got out or could have gotten out of the enclosure, which included this small room, and prepared his ballot elsewhere. We are of the opinion that a sufficient enclosure was provided and that the trial court was justified in refusing to exclude ballots cast at the polling place in precinct No. 6.
Because of the irregularities complained of on this appeal, petitioners ask the court to exclude the vote of an *240 entire precinct. Lehman v. Hill, 414 Ill. 173, is cited by petitioners but not argued. The Lehman case eliminated the vote of a precinct, but there it was found that gross fraud was committed in the voting and by the election officials on a large scale so that it was impossible to separate the fraudulent votes from the legal ones. Here it seems apparent that the board of education and election officials tried to call and conduct an honest election and that the deviations from the letter of the statute were inadvertent and not tinged with fraud or committed with fraudulent intent.
The order of the trial court is affirmed.
Order affirmed.