LINCOLN PARK REALTY, INC. *et al.*, Plaintiffs-Appellees, *v.* CHICAGO COMMISSION ON HUMAN RELATIONS *et al.*, Defendants-Appellants.

(No. 55388;

First District—November 30, 1972.

*Rehearing denied January 4, 1973.*

Richard L. Curry, Corporation Counsel, of Chicago, (William R. Quinlan and Thomas J. Cachor, Assistant Corporation Counsel, of counsel,) for appellants.

Nathenson & Gussin, of Chicago, for appellees.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

This action arose under the Administrative Review Act in the circuit court of Cook County to review the report and decision of the Chicago Commission on Human Relations and a resultant order by the Mayor of the City of Chicago suspending the real estate broker's license held by plaintiffs for a period of 30 days. The trial judge reversed the order of suspension because of the failure of the Commission to issue its report within the time required by the ordinance, and defendants appeal.

The Chicago Fair Housing Ordinance, ch. 198.7-B of the Municipal Code of Chicago, establishes a procedure for the redress of violations. Upon the filing of a complaint, the Commission is authorized to investigate the possibility of a violation. If the Commission determines that probable cause for a violation does exist, a date is set for a conciliation hearing. If conciliation is not successful, the Commission must proceed to a full hearing. Paragraphs 8 and 9 of the ordinance, central to the determination of this appeal, set forth the succeeding steps to be taken. They provide as follows:

"8. Such public hearing shall be conducted by the Commission, or any member thereof, upon due and reasonable notice to all parties. The Commission shall have full power to subpoena witnesses and pertinent documents, which power may be enforced by the Commission by proper petition to any court of competent jurisdiction. The Commission shall have power to administer oaths and to take sworn testimony. At the conclusion of the hearings, the Commission shall render a written report and recommendations, which shall be served by mail upon the complainant and the respondent. No report shall be delayed more than sixty days

after the date of the issuance of notice for commencement of the first hearing.

9. The Commission shall be empowered at the conclusions of such proceedings and as part of its report, to recommend to the Corporation Counsel that an ordinance violation action be taken against any respondent, and, in addition thereto in the case of a real estate broker, to recommend to the Mayor of the City of Chicago the suspension or revocation of the broker's license of any broker licensed by the City of Chicago who shall have been respondent to any proceedings thus filed and found guilty of violation of any applicable provision of the within ordinance. Any broker whose license has been suspended or revoked by the Mayor, or any complainant aggrieved by the decision of the Mayor, shall have full right to appeal from such order of suspension or revocation in accordance with procedure specified in the Administrative Review Act of Illinois. The order of the Mayor shall be final and transmitted to the Commission as part of its record and it shall serve a copy thereof upon the respondent, and any appeal may be taken thereafter.'"

On September 18, 1968, the instant complaint was filed with the Commission against plaintiffs. Attempts at conciliation failed and on March 19, 1969, notice of a public hearing was issued. The hearing was set for April 2, but, upon the request of plaintiffs' attorney that the hearing not be held on a Jewish holiday, it was set for April 9, 1969. The hearing, in its entirety, was held on that date. The evidence at that hearing may be summarized briefly.

Two investigators for the Commission, one caucasian and one Negro, had visited Lincoln Park Realty inquiring about certain property located at 837 Roscoe Street in the City of Chicago. The caucasian investigator spoke with Winkler and was told that the property was being handled by Lincoln Park Realty and was available for $19,500. The Negro investigator subsequently was told by a receptionist, whose name was not obtained, that Lincoln Park Realty was not handling the property in question.

John Winkler, the sole owner of Lincoln Park Realty, testified that his company had been, and still was, handling the property in question. He further testified that he had been at all times, and remained, willing to sell to any buyer regardless of race; that he had never discriminated in his practices; and that he was unaware of the visit of the Negro investigator.

On June 29, 1969, admittedly more than 60 days after the date of the issuance of notice for the commencement of the first hearing, the Com-

mission issued its report finding that plaintiffs had engaged in unfair housing practices, and recommending that the real estate license of John Winkler be revoked or suspended. On April 24, 1970, the Mayor, pursuant to the Commission's report and recommendations, suspended Winkler's license for 30 days.

On July 2, 1970, the trial judge commented that the Commission had acted on sufficient, although rather weak evidence, but stated that, from his examination of the ordinance, the legislative intent dictated these matters be dealt with promptly. He concluded that the requirement that the Commission report be made within 60 days was mandatory, and that by failing to file the report within that time, the Commission had lost jurisdiction, and the subsequent order of suspension was a nullity.

■■ It is conceded that failure to comply with a mandatory provision of an ordinance will render void the proceedings to which it relates. (*Hester v. Kamykowski*, 13 Ill.2d 481, 150 N.E.2d 196.) The defendants, however, argue that the requirement that the Commission make its report within 60 days was not a mandatory provision, but merely directory. Thus they contend that the Commission's failure to make the report within the required time was not a jurisdictional flaw, and did not render the proceedings or the subsequent Mayor's order a nullity. The crucial language contained in paragraph 8 of the ordinance is: "No report shall be delayed more than sixty days after the date of the issuance of notice for the commencement of the first hearing."

■■ Whether statutory language is directory or mandatory is ultimately a question of legislative intent to be ascertained from the nature and objective of the provision. (*Carr v. Board of Education*, 14 Ill.2d 40, 150 N.E.2d 583; *Zbiden v. Bond County Community Unit School Dist. No. 2*, 2 Ill.2d 232, 117 N.E.2d 765.) Nevertheless it has been ordinarily held that "negative, prohibitory, or exclusive words are genrally construed as mandatory when employed in statutory provisions." (82 C.J.S. 875.) Our Supreme Court has also recognized that principle. In *Carrigan v. Liquor Control Com.*, 19 Ill.2d 230, 166 N.E.2d 574, while holding that a certain provision was directory, the court stated:

"* * * where such statute contains negative words, denying the exercise of the power after the time named, or where a disregard of its provisions would injuriously affect public interest or private rights it is not directory but mandatory." 19 Ill.2d 233.

In *People v. Jennings*, 3 Ill.2d 125, 119 N.E.2d 781, where certain statutory language was held to be mandatory, the court, quoting from *French v. Edwards*, 13 Wall. 506, 80 U.S. 506, 20 L. Ed. 702, stated:

"There are, undoubtedly, many statutory requisitions intended for the guide of officers in the conduct of business devolved upon

them, which do not limit their power or render its exercise in disregard of the requisition ineffectual. Such, generally, are requisitions to secure order, system and dispatch in proceedings, and by disregard of which the rights of parties interested cannot be injuriously affected. Provisions of this character are not usually regarded as mandatory unless accompanied by negative words importing that the acts required shall not be done in any other manner or time than designated." 3 Ill.2d 127.

The language in question in the instant ordinance is clearly negative. The trial court, therefore, correctly ruled that the provision was mandatory, and that the Commission's failure to comply with the requirement was jurisdictional, rendering the subsequent proceedings and suspension order void.

Relying on *Daley v. Berzanskis*, 47 Ill.2d 395, 269 N.E.2d 716, defendants offer the novel argument that there is no limit on the Mayor's power to revoke or suspend licenses under the ordinance if he has information from any source, and that therefore the Mayor could validly issue the suspension order apart from the report and recommendations of the Commission. *Berzanskis*, however, does not stand for that sweeping proposition, but simply held that certain evidence which would fall under the exclusionary rule in criminal proceedings could still be admissible in an administrative hearing. We note also that in the instant case the Mayor's suspension order explicitly relied upon the Commission's report. Since the Commission report was void, the resultant order of suspension was a nullity.

For the reasons stated, the judgment of the circuit court is affirmed.

Judgment affirmed.

McGLOON, P. J., and DEMPSEY, J., concur.