2018 IL App (3d) 170177

Opinion filed August 16, 2018

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2018

| | | |
|---|---|---|
| LAKEWOOD NURSING AND REHABILITATION CENTER, LLC, | ) ) ) | |
| | ) | Appeal from the Circuit Court |
| Plaintiff-Appellant, | ) | of the 12th Judicial Circuit, |
| | ) | Will County, Illinois. |
| v. | ) | |
| | ) | |
| THE DEPARTMENT OF PUBLIC | ) | Appeal No. 3-17-0177 |
| HEALTH; LAMAR HASBROUCK, Director of | ) | Circuit No. 14-MR-1184 |
| Public Health; and HELEN SAUVAGEAU, | ) | |
| | ) | |
| Defendants | ) | The Honorable |
| | ) | John C. Anderson, |
| (The Department of Public | ) | Judge, presiding. |
| Health and Lamar Hasbrouck, | ) | |
| Director of Public Health, | ) | |
| Defendants-Appellees). | ) | |
| | ) | |

JUSTICE McDADE delivered the judgment of the court, with opinion.
Presiding Justice Carter and Justice Schmidt concurred in the judgment and opinion.

_____

**OPINION**

¶ 1        Plaintiff Lakewood Nursing and Rehabilitation Center, LLC (Lakewood), filed a notice

of involuntary transfer and discharge against Helen Sauvageau for failure to pay for her

residency. Sauvageau filed a request for hearing, which the parties agreed to stay when

Sauvageau applied for Medicaid. Two days after Sauvageau's application was denied, Lakewood requested defendant Illinois Department of Public Health (IDPH) to set a hearing date. Sixty-eight days after Lakewood's request, a hearing was held. IDPH approved the discharge 30 days after the receipt of its final ruling. Lakewood filed a complaint in the circuit court, arguing that (1) IDPH's ruling is void because it violated statutory time requirements, and (2) IDPH erred when it required Lakewood to keep Sauvageau as a resident for an additional 30 days. IDPH filed a motion to dismiss, which the trial court granted. Lakewood appealed, and this court reversed the trial court's decision. On remand, the trial court determined that IDPH did not violate statutory time requirements and that it had the discretion to impose the 30-day extension. Lakewood appealed. We reverse.

¶ 2                                                    FACTS

¶ 3         This case involves an involuntary discharge of a resident of Lakewood. In 2012, Helen Sauvageau became a Lakewood resident and initially paid for her residency through her pension and social security without the assistance of government financial aid. In August 2013, Sauvageau stopped paying Lakewood.

¶ 4         On October 28, 2013, Lakewood sent Sauvageau a notice of involuntary transfer or discharge and opportunity for hearing. The notice stated that it was seeking to discharge Sauvageau because she failed to pay for her stay at Lakewood. On November 1, 2013, Sauvageau filed an involuntary transfer or discharge request for hearing and, the next day, filed an application for Medicaid. On January 13, 2014, her Medicaid application was denied. On January 15, 2014, Lakewood's attorney informed IDPH of the denial and requested IDPH to set an intent to discharge hearing date.

2

¶ 5        On February 10, 2014, a prehearing was held. Lakewood filed a motion to dismiss its hearing request, arguing that the IDPH no longer had jurisdiction to hold a hearing because it would be doing so after the 10-day limitations period in section 3-411 of the Nursing Home Care Act (210 ILCS 45/3-411 (West 2014)). In Sauvageau's response to the motion to dismiss, she claimed that, through an exchange of e-mails, the parties had agreed to stay the hearing pending her application for medical assistance, that failure to hold a hearing would violate her due process rights, and that the original discharge notice was defective. Sauvageau explained that she applied for medical assistance, that the application was denied, and that she was currently appealing the denial. IDPH denied the motion to dismiss, determining that the language within the section was directory rather than mandatory. It reasoned that there was no negative language denying a hearing if the time requirement was not met and that strict compliance of the time requirement would cause more adverse effects than a delay.

¶ 6        On March 24, 2014, an evidentiary hearing was held. At the hearing, Sauvageau's attorney stated that "we can stipulate to the fact that there are monies due and owing to Lakewood Nursing Home. I don't know that we can stipulate to the exact amount that they are claiming but we can definitely stipulate that we didn't pay because we ran out of money, and we applied for the Medicaid and we've been still in that process with the intent that Medicaid will eventually be approved. It is approved with the spend down and we are hoping to appeal and get some better terms out of that." The administrative law judge (ALJ) recommended, based on Sauvageau's stipulation that she owed money to Lakewood, that the notice of involuntary transfer or discharge should be approved "30 days subsequent to the receipt of the final ruling in this matter." The chief ALJ adopted the recommendation in its final administrative order.

3

¶ 7        Lakewood filed a complaint in the Will County circuit court. The complaint alleged that the hearing and final order is void because they violate the statutory time requirements. It also claimed that the final order unconstitutionally required Lakewood to keep Sauvageau as a resident for an additional 30 days after the order was issued. IDPH filed a motion to dismiss, arguing that Lakewood's claims were moot because Lakewood received the relief it sought as Sauvageau no longer lived in the facility. It also claimed that the trial court only has jurisdiction to review final administrative decisions and that Sauvageau does not challenge the decision but rather seeks "declaratory relief regarding the timing of the Department's actions." The trial court granted the motion to dismiss.

¶ 8        Lakewood appealed, and this court reversed and remanded the trial court's decision in *Lakewood Nursing & Rehabilitation Center, LLC v. Department of Public Health*, 2015 IL App (3d) 140899. This court determined that the issues were moot because relief was not available to Lakewood once Sauvageau left the facility. However, the court found that the public interest and the capable of repetition yet evading review exceptions applied. *Id.* ¶¶ 19, 30, 36. This court stated that the time requirement issues that Lakewood presented were too premature for its review and would be better addressed on remand. *Id.* ¶ 40.

¶ 9        On remand, the parties stipulated to the following facts:

> "1. On July 6, 2012, Helen Sauvageau (hereinafter 'Resident') became a resident at Lakewood Nursing and Rehabilitation Center (hereinafter 'Lakewood') and was a private pay resident (meaning, Resident was not receiving governmental financial aid; Resident had a pension and Social Security) until August 2013, when Resident no longer paid for her nursing stay.

4

2. On October 20, 2013, the facility filed a 'Notice of Intent to Discharge' Resident due to her failure to pay.

3. Resident hired an attorney, who, on November 1, 2013, filed a Notice of Hearing with IDPH for the intended discharge.

4. On or about November 2, 2013, Resident filed an application for Medicaid, which stayed the intent to discharge hearing.

5. On January 13, 2014, Resident's Medicaid application was denied. Resident's request for Medicaid was denied for her stay at Lakewood because Resident gifted her house to her daughter.

6. On January 15, 2014, Lakewood's attorney informed IDPH of the denial and requested the intent to discharge hearing be set.

7. IDPH scheduled the intent to discharge for hearing to occur March 24, 2014 (68 days after January 15, 2014).

8. On March 24, 2014, the intent to discharge hearing was held. At said hearing, Resident's attorney stipulated that Resident had not paid for her stay, and that monies were owed to Lakewood.

9. On May 6, 2014 (43 days after the intent to discharge hearing was held), IDPH signed the Final Order in the intent to discharge case, and mailed said Order to the parties on May 7, 2014 (44 days after the intent to discharge hearing was held).

5

10. In said Final Order, IDPH ordered the facility to allow Resident to stay in the facility an additional 30 days from the date of the Final Order.

11. Lakewood did not consent to the hearing being held more than 10 days after Medicaid denial being issued.

12. Lakewood did not consent to the Final Order being issued more than 14 days after the intent to discharge hearing was held.

13. Lakewood did not consent to the language in the Final Order allowing Resident to remain in the facility for 30 days.

14. Both parties agree that the Nursing Home Care Act, 210 ILCS 45 (more specifically, Art. III Pt. 4 'Discharge and Transfer'; 210 ILCS 45/3-401 through 210 ILCS 45/3-423) governs this review.

15. Both parties agree to limit the issues to those set forth in the Appellate Court remand Order, specifically:

(a) Does the Nursing Home Care Act require IDPH to hold an intent to discharge hearing not later than 10 days after a hearing request is filed?

(b) Does the Nursing Home Care Act require IDPH to render a decision on the discharge within 14 days after a hearing request is filed?

6

(c) Does IDPH have the authority under the Nursing Home Care Act to issue an Order directing the nursing care facility to allow the Resident facing discharge to remain at the facility for a specific period of time after the issuance of a Final Order on the merits of the discharge hearing?"

¶ 10     Lakewood argued that section 3-411's time requirement that IDPH shall hold a hearing no later than 10 days after a hearing request is filed and render a decision within 14 days after the filing of the hearing request are mandatory because (1) the statutory provision affects public and private rights, (2) the provision contains negative language, and (3) the provision unambiguously construes specific time requirements. Furthermore, Lakewood claimed that section 3-413 of the Nursing Home Care Act (210 ILCS 45/3-413 (West 2014)) did not give IDPH authority to approve the notice 30 days after the final ruling.

¶ 11     The circuit court held that section 3-411's time requirements were directory for three reasons: (1) without negative language, provisions that construe procedural commands are generally interpreted as directory, (2) the court must give some deference to an administration's interpretation of the Act it's responsible for administering, and (3) the Act is intended for the protection of nursing home residents and their interests are more protected under a directory interpretation of the statute. The court also ruled that section 3-413 did not prevent IDPH from requiring a period of time a resident is allowed to stay after its decision. It determined that section 3-418, which gives IDPH authority to prepare transfer or discharge plans to ensure the protection of residents, allowed IDPH the discretion to approve the notice 30 days after the final ruling. Lakewood appealed.

¶ 12                                    ANALYSIS

7

¶ 13     Lakewood appeals the trial court's ruling, arguing that the court's interpretation of section 3-411 and section 3-413 was error. We note that Sauvageau is no longer a resident of Lakewood. However, this court has previously determined that these issues meet the mootness exceptions. Therefore, we review Lakewood's claims.

¶ 14     In construing a statute, the function of the court is to ascertain and give effect to the intent of the legislature by examining the entire statute. *Grove School v. Department of Public Health*, 160 Ill. App. 3d 937, 941 (1987). Where the language is clear, it must be given effect without resort to further aids of construction, and a court may not read into it any exceptions, conditions, or limitations that the agency did not express. *Davis v. Toshiba Machine Co.*, 186 Ill. 2d 181, 184-85 (1999). "Determining whether a provision is mandatory or directory is primarily a matter of ascertaining the intention of the legislature." *Alpern v. License Appeal Comm'n*, 38 Ill. App. 3d 565, 567 (1976). The construction of a statute is a question of law reviewed *de novo*. *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 16.

¶ 15                                I. Section 3-411

¶ 16     First, Lakewood claims that the IDPH lacked jurisdiction because it violated section 3-411's statutory time requirements. Citing *Carrigan v. Illinois Liquor Control Comm'n*, 19 Ill. 2d 230, 233 (1960), Lakewood states that generally statutory time requirements are discretionary; however, there are two exceptions: (1) the provision injuriously affects public or private rights or (2) the provision contains negative language. Under the first exception, it argues that the following public and private rights are affected by section 3-411's statutory time period: (1) the rights of Medicare or Medicaid patients awaiting admission, (2) the resident's right to have an "expeditious hearing and determination," (3) the contract rights of Lakewood to avoid keeping nonpaying residents, and (4) potential increased cost on Lakewood to house nonpaying residents.

Under the second exception, it claims that the "no later than" language within section 3-411 constitutes negative language because it prohibits any hearings after expiration of the 10-day period. Furthermore, it alleges that section 3-411 unambiguously mandates specific time requirements. It posits that the 34-day requirement in section 3-413 is specifically calculated to include the 10-day and 14-day requirements in section 3-411 and, therefore, indicates that section 3-411's time requirements are mandatory.

¶ 17    IDPH argues that the time requirements of section 3-411 do not apply because the statute applies to involuntary discharges *other than* an action by the Department of Healthcare and Family Services (DHFS) with respect to the Title XIX Medicaid recipient. IDPH alleges that this case involves an action by the DHFS because Sauvageau had applied for Medicaid shortly after she requested a hearing. Alternatively, IDPH claims that section 3-411 should be given a directory interpretation. In particular, IDPH claims that the purpose of the Act is to protect nursing home residents and that residents would be injured under a mandatory construction, rather than a directory construction, because it would (1) affect the residents' ability to effectively proceed with their claims, (2) " 'encourage facilities to obscure issues and delay in providing necessary information,' " (3) affect the court's compliance with other provisions in the statute, and (4) violate federal law as it could affect due process rights.

¶ 18    The mandatory or directory question " ' "simply denotes whether the failure to comply with a particular procedural step will or will not have the effect of invalidating the governmental action to which the procedural requirement relates." ' " *In re M.I.*, 2013 IL 113776, ¶ 16 (quoting *People v. Robinson*, 217 Ill. 2d 43, 51-52 (2005)). Under the mandatory or directory question, statutes are mandatory if the intent of the legislature dictates a particular consequence for failure to comply with the provision. *Id.* However, in the absence of legislative intent, the statute is

9

directory and no particular consequence flows from noncompliance. *Id.* "If a provision of a statute states that the time for performance of an official duty without any language denying performance after a specified time, it is directory." *Grove School v. Department of Public Health*, 160 Ill. App. 3d 937, 941 (1987). However, "if the time period is provided to safeguard someone's rights, it is mandatory, and the agency cannot perform its official duty after the time requirement has passed." *Id.* (citing *Andrews v. Foxworthy*, 71 Ill. 2d 13 (1978)).

¶ 19    Section 3-411 provides time periods for when the IDPH must hold a hearing on a notice for involuntary transfer or discharge and render a decision. It states:

"The Department of Public Health, when the basis for involuntary transfer or discharge is other than action by the Department of Healthcare and Family Services (formerly Department of Public Aid) with respect to the Title XIX Medicaid recipient, shall hold a hearing at the resident's facility not later than 10 days after a hearing request is filed, and render a decision within 14 days after the filing of the hearing request." 210 ILCS 45/3-411 (West 2014).

¶ 20    In regard to IDPH's initial argument, the plain language of section 3-411 states that the section does not apply when an action by the DHFS with respect to the Title XIX Medicaid recipient is the basis for involuntary transfer or discharge. Here, although IDPH argues that this language applies to this case because Sauvageau applied for Medicaid after her request for a hearing, Sauvageau is not considered a Medicaid *recipient* but rather a Medicaid *applicant* during the proceedings and her Medicaid application is not a basis for the involuntary discharge. Therefore, we reject IDPH's initial argument.

¶ 21    In regard to IDPH's alternative argument, IDPH cites *Grove School,* 160 Ill. App. 3d 937, and *Moon Lake Convalescent Center v. Margolis*, 180 Ill. App. 3d 245 (1989), for the

10

proposition that the right that section 3-411 was designed to protect would be more injured under a mandatory construction rather than a directory construction. In *Grove School*, plaintiff argued that IDPH's administrative decision was void because it failed to comply with time requirements stated in section 3-704 of the Nursing Home Care Act. 160 Ill. App. 3d at 940. The relevant portion of section 3-704 stated that, " 'The Department shall commence [the] hearing within 30 days of receipt of the request for a hearing ***.' " *Id.* at 940-41 (quoting Ill. Rev. Stat. 1985, ch. 111½, ¶ 4153-704). The First District stated that the purpose of the Nursing Home Care Act was to protect nursing home patients and held that the rights of those individuals are more injuriously affected by a mandatory interpretation of the statute. *Id.* at 941. It also found that there was no negative language within the Act. *Id.* Therefore, it ruled that section 3-704's language was directory. *Id.*

¶ 22        In *Margolis*, 180 Ill. App. 3d at 254-55, the First District reviewed whether the time requirements in section 3-702(d) of the Nursing Home Care Act were mandatory or directory. The statute stated that,

> " 'A determination about a complaint which alleges a Type A violation *shall* be made by the Department, in writing, within 7 days after the complaint's receipt. A determination about a complaint which alleges a Type B or C violation *shall* be made by the Department, in writing, within 30 days after the complaint's receipt.' " (Emphases in original.) *Id.* at 254 (quoting Ill. Rev. Stat. 1983, ch. 111½, ¶ 4153-702(d)).

The court noted that the purpose of the Nursing Home Care Act was to protect nursing home residents. *Id.* at 255-56. In light of the Nursing Home Care Act's purpose, it believed that a mandatory construction of section 3-702(d) would result in "obvious" consequences such as unaddressed resident abuses, incomplete and inaccurate determinations, and "encourage facilities

11

to obscure issues and delay in providing necessary information." *Id.* at 256. It further explained that a mandatory interpretation would be "more injurious to residents than the benefits the residents would receive." *Id.* Ultimately, the court found that the provision in section 3-702(d) was directory. *Id.* at 254-55.

¶ 23    Here, the term "not later than 10 days" in section 3-411 constitutes negative language. Illinois courts, including this court, have determined that language prohibiting a further action constitutes negative language and, therefore, a mandatory construction. See *Frances House, Inc. v. Department of Public Health*, 269 Ill. App. 3d 426, 431 (1995) (determining that the phrase "not to exceed 90 days" within section 3-707 of the Nursing Home Care Act constituted negative language and was, therefore, mandatory); *Foley v. Civil Service Comm'n*, 89 Ill. App. 3d 871, 873 (1980) (finding that the phrase "no longer than" within Rule VII of the General Procedure for Review of Police Psychological Exam was negative language, and therefore, Rule VII required a mandatory construction); *Lincoln Park Realty, Inc. v. Chicago Comm'n on Human Relations*, 9 Ill. App. 3d 186, 189-90 (1972) (ruling that an ordinance stating that, " 'No report shall be delayed more than sixty days after the date of the issuance of notice for the commencement of the first hearing' " was "clearly negative," and thus, the provision was mandatory). Therefore, we determine that the provision is mandatory.

¶ 24    Sauvageau filed a notice of hearing on November 1, 2013. The next day, she filed an application for Medicaid and the parties agreed to stay the hearing. In January, Sauvageau's Medicaid application was denied and Lakewood requested IDPH to set a hearing date. However, the hearing was not scheduled until March 2014, 68 days after Lakewood's request. Because the provision is mandatory, we find that IDPH lost jurisdiction because it did not conduct a hearing

12

in 10 days. Because we find that IDPH lacked jurisdiction, we need not determine whether IDPH erred when it did not render its decision within 14 days in accordance with the section.

¶ 25                                                    II. Section 3-413

¶ 26        Next, Lakewood alleges that section 3-413 did not give IDPH authority to delay the effective date of its order by 30 days after its issuance. Section 3-413 governs the time period in which a facility may discharge a resident. It states:

> "If the Department determines that a transfer or discharge is authorized under Section 3-401, the resident shall not be required to leave the facility before the 34th day following receipt of the notice required under Section 3-402, or the 10th day following receipt of the Department's decision, whichever is later, unless a condition which would have allowed transfer or discharge in less than 21 days as described under paragraphs (a) and (b) of Section 3-402 develops in the interim." 210 ILCS 45/3-413 (West 2014).

¶ 27        Looking at the plain language of section 3-413, it does not give IDPH authority to approve the notice of transfer and discharge 30 days after the receipt of the final ruling. See *O'Grady v. Cook County Sheriff's Merit Board*, 260 Ill. App. 3d 529, 534 (1994) ("Any power or authority claimed by an administrative agency must find its source within the provisions of the statute by which the agency was created."). The section only requires Lakewood to maintain Sauvageau as a resident for 34 days following the receipt of the notice or 10 days following the receipt of the final ruling. Therefore, we find that IDPH's ruling regarding the 30-day extension is void. See *Walsh v. Champaign County Sheriff's Merit Comm'n*, 404 Ill. App. 3d 933, 938 (2010) (any action beyond the administrative agency's statutory authority is void).

¶ 28        IDPH argues that section 3-418 gave it "broad, discretionary" authority to approve the notice 30 days after the receipt of the final ruling. Section 3-418 states: "The Department shall

13

prepare resident transfer or discharge plans to assure safe and orderly removals and protect residents' health, safety, welfare and rights." 210 ILCS 45/3-418 (West 2014).

¶ 29    "A court presumes that the legislature intended that two or more statutes which relate to the same subject are to be read harmoniously so that no provisions are rendered inoperative." *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 458-59 (2002). When a general statutory provision and a specific statutory provision exist in the same act, the specific provision controls and should be applied. *Id.* at 459.

¶ 30    Here, section 3-413 specifically addresses the time period in which a resident is not required to leave the facility. Section 3-418 provides a general provision that allows IDPH to prepare discharge plans for safe and orderly removals. Based on the rules of statutory interpretation, we determine that section 3-413 controls in this case. Therefore, we reject IDPH's argument.

¶ 31                                    CONCLUSION

¶ 32    The judgment of the circuit court of Will County is reversed.

¶ 33    Reversed.