# Illinois Official Reports

## Supreme Court

---

**Lakewood Nursing & Rehabilitation Center, LLC v. Department of Public Health,**
**2019 IL 124019**

---

Caption in Supreme
Court:

LAKEWOOD NURSING AND REHABILITATION CENTER,
LLC, Appellee, v. THE DEPARTMENT OF PUBLIC HEALTH
*et al.*, Appellants.

Docket No.

124019

Filed

November 21, 2019

Decision Under
Review

Appeal from the Appellate Court for the Third District; heard in that
court on appeal from the Circuit Court of Will County, the Hon. John
C. Anderson, Judge, presiding.

Judgment

Appellate court judgment reversed.
Circuit court judgment affirmed.

Counsel on
Appeal

Kwame Raoul, Attorney General, of Springfield (Jane Elinor Notz,
Solicitor General, and Laura Wunder, Assistant Attorney General, of
Chicago, of counsel), for appellants.

Holly Turner, of Evanston, and Omar Fayez, of Huston, May & Fayez,
LLC, of Chicago, for appellee.

Sarah Megan, Bernard H. Shapiro, and Dolores Wigman, of Prairie
State Legal Services, Inc., of St. Charles, *amicus curiae*.

Suzanne Courtheoux, Chad Baker, and Miriam Hallbauer, of LAF, Meghan P. Carter, of Legal Council for Health Justice, and Laura Miller and Cristina Headley, of Equip for Equality, all of Chicago, *amici curiae*.

Justices        JUSTICE NEVILLE delivered the judgment of the court, with opinion.

Chief Justice Burke and Justices Thomas, Kilbride, Garman, Karmeier, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1      Plaintiff, Lakewood Nursing and Rehabilitation Center, LLC (Lakewood), instituted administrative proceedings for the involuntary discharge of Helen Sauvageau, one of its residents. Sauvageau requested a hearing, and the Illinois Department of Public Health approved the discharge. Lakewood subsequently brought an action for administrative review against the Department of Public Health and its director (collectively, the Department), arguing that the hearing and decision were not timely under the Nursing Home Care Act (Act) (210 ILCS 45/1-101 *et seq.* (West 2012)). The circuit court of Will County determined that the Department did not violate the statutory time requirements. The appellate court reversed, holding that the Department lost jurisdiction over the involuntary discharge of Sauvageau because it had not held a hearing within 10 days of her hearing request. See 2018 IL App (3d) 170177. We allowed the Department's petition for leave to appeal (Ill. S. Ct. R. 315(a) (eff. July 1, 2018)). For the reasons that follow, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

¶ 2                           I. BACKGROUND

¶ 3      In July 2012, Helen Sauvageau became a Lakewood resident and paid for her residency through her pension and Social Security income without the assistance of government financial aid. Sauvageau stopped paying Lakewood in August 2013.

¶ 4      On October 28, 2013, Lakewood sent her a notice of involuntary transfer or discharge for failing to pay for her residency at Lakewood. On November 1, 2013, Sauvageau, acting through counsel, filed a request for hearing on the notice of involuntary transfer or discharge. The following day, she filed an application for Medicaid benefits. Her Medicaid application was denied on January 13, 2014, and on January 15, 2014, Lakewood's attorney informed the Department of the denial and requested that a hearing on the notice of intent to discharge be scheduled.

¶ 5      On February 10, 2014, a prehearing conference was held before an administrative law judge (ALJ). At that time, Lakewood presented a motion to dismiss contending that, under the Act, the Department could not conduct a hearing more than 10 days from the date of a resident's request. Ten days later, the ALJ denied Lakewood's motion based on the

- 2 -

determination that the Department had not lost jurisdiction over the involuntary transfer proceeding.

¶ 6     The hearing was conducted on March 24, 2014, and Sauvageau's counsel acknowledged that she owed Lakewood money for her stay. In April 2014, the ALJ issued a report and recommendation in which he recommended that the notice of involuntary discharge be approved 30 days subsequent to the receipt of the final ruling. On May 6, 2014, the chief ALJ issued the Department's final administrative decision, adopting the ALJ's recommendation and approving Lakewood's notice of involuntary discharge within 30 days. Sauvageau left the facility on May 29, 2014.

¶ 7     Lakewood thereafter filed a complaint for administrative review of the Department's final decision.[1] Lakewood's complaint asserted, *inter alia*, that the Department lacked authority to exceed the statutory 10-day hearing time and 14-day decision time for involuntary transfer or discharge proceedings.

¶ 8     The circuit court dismissed Lakewood's complaint as moot because Sauvageau had already left the facility. Lakewood appealed, and the appellate court reversed and remanded based on its conclusion that the issues should be considered under the public-interest exception to the mootness doctrine. 2015 IL App (3d) 140899.

¶ 9     On remand, Lakewood argued that section 3-411 of the Act, which requires that the Department conduct a hearing "not later than 10 days" after a resident's request and render a decision within 14 days after the request, is mandatory. 210 ILCS 45/3-411 (West 2012). Lakewood further claimed that section 3-413 did not give the Department authority to approve the notice 30 days after its final ruling. *Id.* § 3-413.

¶ 10    The circuit court determined that section 3-411's time requirements are directory because section 3-411 does not include negative language or any consequence for noncompliance that would overcome the presumption that procedural commands are generally interpreted as directory. The circuit court observed that the Act is intended to protect nursing home residents, whose interests are better protected by a directory interpretation of section 3-411. The circuit court also determined that section 3-413 did not prevent the Department from approving a notice of involuntary discharge 30 days after its final decision. Lakewood appealed, arguing that the circuit court's interpretation of sections 3-411 and 3-413 was erroneous.

¶ 11    The appellate court reversed, holding that the Department lost jurisdiction over Sauvageau's involuntary discharge proceeding because it did not conduct a hearing within 10 days. 2018 IL App 3d 170177, ¶ 24. The court concluded that the phrase " 'not later than 10 days' in section 3-411 constitutes negative language" that requires a mandatory construction. *Id.* ¶ 23. The appellate court also determined that section 3-413 did not give the Department authority to approve the notice of transfer and discharge 30 days after receipt of the final ruling. *Id.* ¶ 27.

¶ 12    The Department appeals to this court. We also allowed Prairie State Legal Services, LAF, Legal Council for Health Justice, and Equip for Equality to file briefs as *amici curiae* in support

_____

[1]Lakewood's complaint named then-director LaMar Hasbrouck as a defendant. By operation of law, Hasbrouck was later replaced by Nirav Shah, and Shah has since been replaced by the current director, Ngozi Ezike. See 735 ILCS 5/2-1008(d) (West 2018).

of the Department's position. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 13                              II. ANALYSIS

¶ 14        The Department challenges the appellate court's holding that the 10-day hearing period set forth in section 3-411 is mandatory and that noncompliance with that time period deprives the Department of jurisdiction to conduct a hearing on a notice of involuntary transfer or discharge.[2] In particular, the Department contends that a mandatory construction undermines the legislature's intent to protect a resident's statutory right to an administrative hearing and decision prior to involuntary discharge. The Department further maintains that the terms of the Act, its underlying policies, and its interplay with federal law demonstrate that section 3-411 must be given a directory construction.

¶ 15        Lakewood urges that the appellate court's judgment be affirmed, asserting that section 3-411 contains negative language requiring that it be given a mandatory construction. Lakewood further contends that a mandatory interpretation is justified because the specified time requirements affect the private contract rights and property interests of nursing home facilities as well as public interests.

¶ 16        The determination of whether a statutory command is mandatory or directory presents a question of law involving statutory construction. *In re M.I.*, 2013 IL 113776, ¶ 15 (citing *People v. Robinson*, 217 Ill. 2d 43, 54 (2005)). Consequently, our review is *de novo. Id.*; see also *In re M.M.*, 2016 IL 119932, ¶ 15; *Slepicka v. Illinois Department of Public Health*, 2014 IL 116927, ¶ 13.

¶ 17        When construing a statute, this court's primary objective is to ascertain and give effect to the intent of the legislature. *In re M.M.*, 2016 IL 119932, ¶ 16. The best evidence of legislative intent is the language of the statute, which should be given its plain and ordinary meaning. *Id.* Because the statute is viewed as a whole, words and phrases must be construed in light of other relevant statutory provisions and not in isolation. *Id.* Each word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous. *Id.* In determining legislative intent, a court may consider not only the language of the statute but also the reason and necessity for the law, the problems sought to be remedied, the purpose to be achieved, and the consequences of construing the statute one way or another. *Id.* Further, we must presume that the legislature did not intend to enact a statute that leads to absurdity, inconvenience, or injustice. *Slepicka*, 2014 IL 116927, ¶ 15.

¶ 18                          A. Statutory Overview

¶ 19        We begin by considering the nature and purpose of the Act as a general guide to the intent of the legislature in adopting particular language or provisions. See *In re M.M.*, 2016 IL 119932, ¶ 16. In *Harris v. Manor Healthcare Corp.*, 111 Ill. 2d 350 (1986), this court explained the genesis and objectives of the Act, stating

---

[2]Although the term "jurisdiction" is not strictly applicable to an administrative agency, it may be used to refer to the authority of the administrative agency to act. *Business & Professional People for the Public Interest v. Illinois Commerce Comm'n*, 136 Ill. 2d 192, 243 (1989) (citing *Newkirk v. Bigard*, 109 Ill. 2d 28, 36 (1985)).

"[t]he General Assembly enacted the [Act] amid concern over reports of 'inadequate, improper and degrading treatment of patients in nursing homes.' (Senate Debates, 81st Ill. Gen. Assem., May 14, 1979, at 184 (statement of Senator Karl Berning).) The Act *** [instituted] a comprehensive statute which established standards for the treatment and care of nursing home residents *** and expanded the power of the [Department] to enforce the provisions of the Act." *Id.* at 358 (citing Richard M. Daley & Timothy S. Jost, *The Nursing Home Reform Act of 1979*, 68 Ill. B.J. 448 (1980)).

¶ 20      The primary purpose of the Act is to protect nursing home residents. See *Moon Lake Convalescent Center v. Margolis*, 180 Ill. App. 3d 245, 255 (1989); *Grove School v. Department of Public Health*, 160 Ill. App. 3d 937, 941 (1987). To achieve that goal, the Act establishes a comprehensive regulatory scheme to safeguard against abuse and neglect of residents and to ensure that nursing home facilities comply with their statutory responsibilities. 210 ILCS 45/1-101 *et seq.* (West 2012). In particular, part 1 of article II prescribes various rights of nursing home residents. See *id.* §§ 2-101 to 2-114.

¶ 21      Moreover, the Act and related federal law preclude nursing home facilities from involuntarily transferring or discharging residents except for certain limited reasons, generally involving medical needs, safety, or nonpayment. *Id.* § 3-401; see also 42 C.F.R. § 483.15 (2019). With regard to involuntary removals, the Act imposes a protocol requiring a nursing home facility to notify a resident of the reasons and date for a proposed transfer or discharge. 210 ILCS 45/3-403 (West 2012). Within 10 days of receiving such a notice, the resident may request an administrative hearing before the Department. *Id.* § 3-410. If no medical or safety concerns are involved, a resident's hearing request stays the involuntary transfer or discharge. *Id.* §§ 3-402(a)-(b), 3-404.

¶ 22      The Act further provides that a section 3-411 hearing "shall be conducted as prescribed under Section 3-703." *Id.* § 3-412. In addition, other provisions incorporate detailed procedural protections, including requiring an initial notice before the hearing; providing for subpoenas of witnesses and documentary evidence; permitting the parties to be represented by counsel; allowing the deposition of witnesses whose attendance cannot be secured; and requiring the Director of Public Health to review the record, findings, and recommendation and render a final decision, when a hearing officer initially hears a matter. See *id.* §§ 3-703 through 3-707.

¶ 23      These provisions of the Act incorporate by reference several time frames that are inconsistent with the time limits set forth in section 3-411. In particular, section 3-704(c) provides that hearings shall commence within 30 days of a resident's request, and section 3-704(b) provides that a notice of hearing shall be issued at least 10 days before the hearing, while section 3-411 provides that the hearing shall take place within 10 days. *Id.* §§ 3-411, 3-704(b), (c). Also, section 3-707 provides that the Director of Public Health shall render a decision within 30 days after termination of the hearing, unless additional time not to exceed 90 days is required, while section 3-411 provides that the Director of Public Health's decision shall issue within 14 days after the hearing request. *Id.* §§ 3-411, 3-707.

¶ 24      Further, federal law requires that any state participating in the Medicare or Medicaid programs must provide for a fair hearing process for all residents who face involuntary discharge. 42 C.F.R. § 431.205(d) (2019). The regulations require that a state's "hearing system must meet the due process standards set forth in *Goldberg v. Kelly*, 397 U.S. 254

(1970)." *Id.* In *Goldberg*, the United States Supreme Court held that the fundamental requisite of due process of law is the opportunity to be heard at a meaningful time and in a meaningful manner. *Goldberg*, 397 U.S. at 267 (citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

¶ 25                                B. Mandatory Versus Directory

¶ 26    At issue here is the language of section 3-411, which provides, in relevant part, as follows:

> "The Department of Public Health *** shall hold a hearing at the resident's facility not later than 10 days after a hearing request is filed, and render a decision within 14 days after the filing of the hearing request." 210 ILCS 45/3-411 (West 2012).

¶ 27    The Department contends that the appellate court erred in holding that the terms of section 3-411 are mandatory and further argues that a directory construction is necessary to fulfill the Act's purpose of protecting residents.

¶ 28    Lakewood responds that, pursuant to section 3-411, a hearing on a notice of involuntary transfer or discharge must be held within 10 days of the resident's request. Specifically, Lakewood argues that, because a nursing home facility must accept responsibility for the personal care and medical treatment of a resident, the timeliness of the discharge hearing and decision by the Department must be construed as mandatory because it impacts both public interests and private rights.

¶ 29    As this court has explained,

> "the law presumes that statutory language issuing a procedural command to a government official is directory rather than mandatory, meaning that the failure to comply with a particular procedural step will not have the effect of invalidating the governmental action to which the procedural requirement relates. That presumption can be overcome under either of two conditions: (1) when there is negative language prohibiting further action in the case of noncompliance or (2) when the right the provision is designed to protect would generally be injured under a directory reading."
> *In re James W.*, 2014 IL 114483, ¶ 35 (citing *In re M.I.*, 2013 IL 113776, ¶¶ 16-17).

See also *Round v. Lamb*, 2017 IL 122271, ¶ 13; *In re Rita P.*, 2014 IL 115798, ¶¶ 43-44; *Robinson*, 217 Ill. 2d at 56-58. We conclude that neither condition is present in this case.

¶ 30                          1. The Negative Language Condition

¶ 31    With regard to the first condition, the appellate court held that section 3-411 must be construed as mandatory because the phrase "not later than 10 days" constitutes negative language that precludes the Department from holding a hearing more than 10 days after a resident's hearing request has been filed. 2018 IL App (3d) 170177, ¶ 23. Lakewood agrees, contending that the failure to strictly comply with the terms of section 3-411 deprives the Department of authority to hold any discharge hearing at all. The Department argues that the appellate court and Lakewood have misapplied the negative language condition to section 3-411. We agree with the Department.

¶ 32    Under Illinois law, the directory/mandatory dichotomy requires more than simply scanning the statutory language to ascertain the existence of words or phrases that have a negative connotation. In *People v. Jennings*, 3 Ill. 2d 125, 127 (1954), this court determined that statutory regulations intended to guide public officers generally are not regarded as mandatory

unless they are accompanied by negative words indicating that the specified acts shall not be done in any other manner or time than that prescribed. See also *In re Application of the County Collector of Kane County*, 132 Ill. 2d 64, 75 (1989) (holding an ordinance that expressly states the effect of noncompliance is mandatory).

¶ 33 In *Robinson*, this court further explained that, "when the statute expressly prescribes a consequence for failure to obey a statutory provision, that is very strong evidence the legislature intended that consequence to be mandatory." *Robinson*, 217 Ill. 2d at 54. Also, although a directory reading may result in consequences, the absence of language specifying a particular consequence for noncompliance with the provision results in a directory interpretation. See *In re M.I.*, 2013 IL 113776, ¶ 16 (citing *People v. Delvillar*, 235 Ill. 2d 507, 515 (2009)). The determination of whether a statutory provision is mandatory or directory requires an examination of whether noncompliance with a specific procedural command has " 'the effect of invalidating the governmental action to which the procedural requirement relates.' " *Robinson*, 217 Ill. 2d at 51-52 (quoting *Morris v. County of Marin*, 559 P.2d 606, 610-11 (Cal. 1977) (*en banc*)).

¶ 34 Thus, the inclusion of statutory language that has a negative connotation is one component of the analysis but is not dispositive. Such language alone, without any indication that the legislature intended to deny authority and prohibit further action in the case of noncompliance, is insufficient to justify a mandatory interpretation.

¶ 35 Here, section 3-411 does not contain any language prohibiting further action, nor does it provide a specific consequence for noncompliance with its time limits. 210 ILCS 45/3-411 (West 2012). In fact, Lakewood conceded as much at oral argument. Consequently, the negative language condition does not apply to overcome the presumption of a directory construction of section 3-411.

¶ 36 In reaching the opposite conclusion, the appellate court held that the phrase "not later than 10 days" constituted negative language that required a mandatory construction. 2018 IL App (3d) 170177, ¶ 23. As support, the court relied on *Frances House, Inc. v. Department of Public Health*, 269 Ill. App. 3d 426, 430-31 (1995), which held that the phrase "not to exceed 90 days" was negative language and required a mandatory construction. A similar determination was reached by the appellate court in *Foley v. Civil Service Comm'n*, 89 Ill. App. 3d 871, 873 (1980), and *Lincoln Park Realty, Inc. v. Chicago Comm'n on Human Relations*, 9 Ill. App. 3d 186, 190 (1972). Yet none of these appellate court decisions addressed the fact that a mandatory construction is supported only where the statute precludes further action and imposes a specific consequence in the event of noncompliance. To the extent these decisions suggest that negative language, without more, is sufficient to justify a mandatory construction, they are overruled as inconsistent with our established precedent.

¶ 37                                          2. The Rights Protected Condition

¶ 38 We next consider whether the second condition of injury to protected rights overcomes the presumption of a directory construction.[3] The Department argues there is no indication that the rights protected by section 3-411 would generally be injured by a directory reading.

---

[3] Because the appellate court found that the negative language condition was satisfied and dispositive, it did not reach this issue. See 2018 IL App (3d) 170177.

Lakewood counters that a directory construction must be rejected because such an interpretation would injure the public interest as well as the private contract and property rights of nursing home facilities. Again, we agree with the Department.

¶ 39    Under this court's long-standing precedent, a statutory command will be construed as mandatory when the right the provision is designed to protect would generally be injured under a directory reading. *Robinson*, 217 Ill. 2d at 56. This principle is firmly established as a fixture in our jurisprudence. In *Jennings*, this court construed as mandatory a statutory provision that was designed for the benefit of taxpayers and was intended to protect their property. See *Jennings*, 3 Ill. 2d at 127-28 (citing *Lyon v. Alley*, 130 U.S. 177, 185 (1889), *French v. Edwards*, 80 U.S. 506, 511 (1871), and *Heidenway v. Harding*, 336 Ill. 606, 611 (1929)); see also *Andrews v. Foxworthy*, 71 Ill. 2d 13, 21 (1978).

¶ 40    Here, the terms of section 3-411 are designed to protect a nursing home resident's right to a hearing and decision by the Department before an involuntary transfer or discharge from the facility may be effectuated. While a prompt hearing and expeditious decision by the Department often will be beneficial to the resident, a mandatory construction of the 10-day hearing period and the 14-day decision time is not critical to achieve that purpose. In fact, in some cases, the resident's right to a timely hearing and decision by the Department will be injuriously affected by an inflexible application of those time limits. As the Department explains, there may be circumstances in which a resident's physical or mental condition prevents him or her from engaging in full and meaningful participation if the hearing must be held within 10 days. In such cases, a delay of the hearing beyond the 10-day time period could work to the resident's benefit where additional time will permit the resident to participate in the hearing in a meaningful way.

¶ 41    In addition, we note that the Act permits the parties to retain counsel, subpoena witnesses and documentary evidence, and depose witnesses who may be unavailable and also requires that the Director of Public Health shall review the record before rendering a decision. Taking advantage of these procedural protections will prolong the administrative proceeding. In that circumstance, the 10-day hearing period and 14-day decision time may not be realistic and could severely hamper the ability of the resident to challenge the underlying basis for the involuntary removal. Indeed, strict compliance with the specified time limits could be detrimental to the resident's right to a hearing and a decision by a neutral arbiter prior to being involuntarily discharged. Thus, permitting additional time ensures that the parties and the Department will have adequate time to obtain and review all of the relevant information. In light of these considerations, we hold that the time limitations set forth in section 3-411 are directory and not mandatory.

¶ 42    Lakewood urges a contrary result, contending that section 3-411 must be construed as mandatory because the failure to adhere to the specified time limits will adversely affect the private contract rights and property interests of nursing home facilities as well as public interests. According to Lakewood, because a nursing home facility must provide personal care and medical treatment of a resident while a hearing request is pending, a directory construction will cause such facilities to suffer a litany of adverse effects and financial sacrifices. In Lakewood's view, the legislature was balancing the rights and interests of nursing home residents and facilities when it enacted the time limitations in section 3-411.

¶ 43    In support of this argument, Lakewood places significant reliance on *Carrigan v. Illinois Liquor Control Comm'n*, 19 Ill. 2d 230, 233 (1960), which stated that, "where a disregard of [a time limit in a statutory provision] would injuriously affect public interests or private rights, it is not directory but mandatory." Although *Carrigan* cited *Jennings* as support for this proposition, its reference to the analysis in *Jennings* is incorrect and departed from our established law. The *Carrigan* court failed to acknowledge that the reasoning in *Jennings* was premised on *Lyon*, *French*, and *Heidenway*, all three of which recognized that it is injury to the right the statute was designed to protect that will justify a mandatory interpretation. Thus, the above-quoted statement in *Carrigan* is a misstatement of Illinois law. Consequently, Lakewood's reliance on that portion of *Carrigan* is misplaced, and we find no compelling reason to depart from our long-standing precedent.

¶ 44    Under our established analytical framework, courts do not look to whether *any* right of *any* person or entity will be adversely affected by a directory interpretation. Rather, we look to whether the right the statute is designed to protect will be injured by a directory construction. Here, the only rights referred to in section 3-411 are those of the resident to receive a hearing and decision by the Department prior to involuntary removal. Therefore, the fact that a nursing home facility may be adversely impacted by a directory construction of section 3-411 is not determinative of whether the rights-protected condition has been satisfied.

¶ 45    Although Lakewood refers to a long list of the private rights of nursing home operators that may suffer as a result of a directory construction, none of those rights are specified in section 3-411. There is nothing in the statutory language to suggest that the legislature intended to protect the contract and property rights of nursing home facilities—and Lakewood has not cited any authority to support that notion. We similarly find no evidence that the General Assembly sought to balance the interests of residents against those of nursing home facilities, and Lakewood has offered no authority for that assertion. Moreover, section 3-411 makes no reference to the public interest, and there is no indication that its terms are intended to maintain the availability of nursing home beds or the costs of care.

¶ 46    Acceptance of Lakewood's argument would mean that any delay beyond the specified time periods—regardless of how long or the nature of the reason—would effectively extinguish a resident's right to a hearing and decision by the Department. In such a circumstance, the nursing home facility would have the ability to decide unilaterally whether involuntary removal is warranted, without any oversight by the Department as a neutral arbiter, as contemplated by the Act. We do not believe that unilateral action by the facility is what the legislature intended. To the contrary, the statutory scheme set forth in the Act demonstrates that the opposite is true. We also observe that a mandatory construction could serve to incentivize a nursing home facility to delay a hearing beyond the 10-day time period. See *In re M.I.*, 2013 IL 113776, ¶ 26 (noting that a mandatory construction could result in dilatory litigation tactics that may jeopardize the right the statutory provision was intended to protect).

¶ 47    Also, as explained above, federal law requires that any state participating in the Medicare or Medicaid programs must provide all residents who face involuntary discharge a fair hearing process that allows for the opportunity to be heard at a meaningful time and in a meaningful manner in compliance with *Goldberg*. See 42 C.F.R. § 431.205(d) (2019). The procedural protections incorporated by sections 3-413 and 3-703 through 3-707 of the Act, which implement those federal directives, recognize that additional time may be necessary. 210 ILCS

45/3-413, 3-703 to 3-707. The fact that the 10-day hearing period and 14-day decision time may in some cases satisfy due process does not mean that they will do so in all cases. A mandatory interpretation requiring that the Department conduct all hearings "not later than 10 days" after a request—or not at all—must be rejected where it may not comport with due process.

¶ 48 We note that Lakewood also asserts that the time requirements set forth in section 3-411 must be construed as mandatory because a directory interpretation would result in an unconstitutional taking of its property and interference with its contract rights. These bare contentions are not supported by any analysis or relevant authority. This court will consider only issues that have been fully briefed and argued. Ill. S. Ct. R. 341(h)(7), (i) (eff. May 25, 2018). A court of review is entitled to have the issues clearly defined with relevant authority cited and cohesive arguments presented. *In re M.M.*, 2016 IL 119932, ¶ 30 (citing *Lake County Grading Co. v. Village of Antioch*, 2014 IL 115805, ¶ 36). Consequently, Lakewood has forfeited its claims of an unconstitutional taking and contract interference by failing to present fully briefed arguments, and we decline to consider them. See *id.* (citing *Bartlow v. Costigan*, 2014 IL 115152, ¶ 52).

¶ 49 We also reject Lakewood's contention that a mandatory construction is necessary because it has no avenue for relief if the Department fails to conduct a hearing and issue a decision in a timely manner. Although Lakewood claims that an action for *mandamus* is not available to require the Department to take action, it has not cited any relevant authority as support for that proposition.

¶ 50 Finally, we address Lakewood's contention that a directory construction would permit a hearing to be delayed indefinitely. It is beyond dispute that involuntary transfer or discharge hearings should proceed with timeliness and efficiency. Prolonged delays that are not justified by the physical or mental health of the resident or by the exigencies of the hearing process itself should be avoided, and we encourage the Department to be mindful of that fact in undertaking its review and oversight responsibilities. That said, the statutory goal of prompt resolution for involuntary removal cases does not compel a mandatory construction of section 3-411.

¶ 51                                         III. CONCLUSION

¶ 52 In sum, we conclude that section 3-411 of the Act is directory because it does not contain negative language precluding the Department from conducting a hearing beyond the 10-day time period and because the rights of nursing home residents will not be generally injured by a directory construction. Accordingly, the appellate court erred in concluding that the Department was deprived of authority to hold the hearing after the expiration of the 10-day hearing period. For the foregoing reasons, the judgment of the appellate court is reversed, and the judgment of the circuit court of Will County is affirmed.

¶ 53 Appellate court judgment reversed.
¶ 54 Circuit court judgment affirmed.